COMMONWEALTH *vs.* AMOS R. NICKERSON & others.[*]

Proof of entering a school-room and forcibly seizing a child of nine years old, placed there by the direction of his father, who had the legal custody of him, and carrying him away, without any previous knowledge on his part of the purpose in so doing, is sufficient to sustain an indictment for an assault and battery upon and false imprisonment of the child, under Gen. Sts. *c.* 160, § 30, without proof that the defendants knew that they were violating the father's rights, and although the acts were done under the direction of the child's mother, and he, as soon as he knew that the purpose of the seizure was to take him to her, was pleased and desirous to have the purpose carried out.

A child of the age of nine years is incapable of giving a valid assent to a forcible transfer of him, by a stranger, from the legal custody of his father to the custody of his mother,

---

[*] This case was argued in January 1863.

who had no right thereto; and evidence of such assent is incompetent in defence to an indictment for an assault and battery upon him in making such transfer.

If an indictment in the first count charges simply the commission of certain criminal acts, and in other counts charges the commission of the same acts with the addition of a certain specific intent, a general verdict of guilty, rendered under instructions that it was necessary to prove the intent charged in the indictment, may be sustained as a good verdict upon the first count, although, by reason of erroneous instructions as to what would be sufficient proof of such specific intent, it cannot be sustained as to the other counts.

In an indictment under Gen. Sts. *c.* 160, § 30, for an assault and battery upon a child, and forcibly seizing him with intent to send him and cause him to be sent out of the Commonwealth, the intent must be proved as charged; and it is not enough simply to prove that the defendants, being employed by one who had such intent, of which they were ignorant, made the seizure, intending to put the child into the absolute control of their employer, to do as he pleased with him.

No exception lies to a ruling which excludes the further cross-examination of a witness, whose direct and cross-examination have several times been taken up and dropped.

INDICTMENT under Gen. Sts. *c.* 160, § 30. The 1st count charged that the defendants, three in number, on the 4th of August 1860, at Nahant, committed an assault and battery upon Charles A. T. Rice, and then and there without any lawful authority and without the consent and against the will of said Charles confined and imprisoned him for the space of two hours. The 2d count charged the commission of the same acts, with intent and design to send the said Charles and cause him to be sent from and out of the limits of the Commonwealth, without his consent and against his will. The 3d count charged that the defendants, at the time and place above named, fraudulently, wickedly and without any lawful authority, forcibly seized, confined, inveigled and kidnapped said Charles, he being the minor son of Henry G. Rice and in the lawful custody and guardianship of his father, with intent to send him and cause him to be sent from and out of the Commonwealth, without the consent and against the will of the said Charles and of his father.

At the trial in the superior court, before *Lord,* J., evidence was introduced on the part of the Commonwealth tending to show that Charles A. T. Rice, named in the indictment, is the son of Henry G. Rice, and at the time of the alleged offence was a little more than nine years old; that he and his father were temporarily residing in Nahant; that the father had provided a

school for the son kept by one Fette, and that on the 4th of August 1860 the boy was in school attending to his ordinary duties; that while the boy was reciting two men rushed into the school-house, one of them seized the master, Fette, pushed him across the school-room and held him, while the other rushed to them, raised a cudgel above the head of Fette, saying to Fette, "If you touch him, (referring to the one holding Fette,) I'll strike;" that while this was going on a third person rushed into the school-room, seized young Rice and carried him out of doors and put him into an open wagon, thrusting him wholly or partially under the seat of the wagon, and rapidly drove off, when the other two came out of the school-house, running, followed by Fette making outcries, till they reached a carriage a short distance from the school, got into it, and followed the wagon in which was the third man with young Rice; that immediately afterwards search was made in every direction for the child by the father, who for this purpose employed many persons, detectives and others; that within a few days traces of the child were found in Vermont and in Canada, and along the border line between Canada and Vermont, and that with that exception no trace of the child has been discovered by the father up to the time of trial.

The defendants relied upon two grounds of defence : first, that they did not do the acts alleged, and to this end offered much proof of an *alibi;* secondly, that if done by them, what was done was done with the consent of the boy and by the wish of the mother of the boy, to whom, it was claimed, the custody of him belonged.

Upon the question in whose custody the boy was, there was evidence that his father and mother intermarried about the year 1850, and from that time to the time of the trial they had lived together but a small portion of the time, being separated for long intervals until 1856, since when they have not lived together; and until 1860 the mother and child had not been separated. It further appeared that in September 1858 the mother obtained a decree of divorce in the state of Indiana, and a further decree granting to her the custody of the child;

that on the 7th of December 1859 the father and mother entered into a written agreement, by which the custody of the child was conceded to the father upon certain terms and conditions therein mentioned, he agreeing to perform the same, notwithstanding any decree that might be made concerning the custody of the child in proceedings for a divorce in Maryland, provided that he should institute such proceedings; that in January 1860 the father obtained a decree of divorce ·in Maryland, where he resided, and a further decree granting to him the custody of the child; that afterwards disputes arose concerning the above agreement, and the mother sued out of this court a writ of *habeas corpus* for the child, upon which after a hearing it was ordered by the chief justice of this court, on the 1st of August 1860, that the custody of the child be remanded to the father. The judge ruled that the effect of these proceedings was that the legal custody of the child on the 4th of August 1860 was in the father, and that neither the mother nor any other person had the right to take him from that custody by force.

The direct examination of Henry G. Rice, the father, was confined on the part of the Commonwealth to a few points; the cross-examination was very long, and introduced a great variety of matters; upon re-examination, some of these matters were explained; the witness was then cross-examined again, and upon further re-examination was asked if he heard the mother say in Boston that she induced the child to try to run away from his father, to which he replied that he did. Upon further cross-examination, he said he thought the statement was made in the course of her testimony as a witness. He was then asked, what else she testified to. This was objected to, and excluded; the judge remarking that the examination had been for a long time irregular. The defendants asked the judge to note an exception to the ruling; and the judge accordingly reported the facts, in the bill of exceptions, so that if they had a right of exception at that stage of the examination they might have the benefit of it.

The defendants made requests for various rulings, which the judge declined to make in the language prayed for, but instructed the jury that upon the 1st count of the indictment the

44 *

burden of proof was upon the Commonwealth to show that the child was seized and imprisoned by force and against his will; and, upon the 2d, to show that such seizure was for the purpose of taking him from the Commonwealth against his will; that, whenever the burden of proof was upon the government to establish a fact, it was necessary to establish it beyond a reasonable doubt; and that the burden was upon the government in this case to establish every fact alleged in the indictment. As to what would constitute a seizing and imprisoning by force and against the will, the following instruction was given: " If the defendants, either alone or in company and in concert with others engaged in the same enterprise, entered the school-room, with no previous knowledge, on the part of the child, of their object, purpose or intention, and they or either of them (all being engaged in the common enterprise) seized the child and took him into a carriage with the intent charged in the indictment, that is such a taking by force and against the will of the child as will satisfy the requirements of the statute, although the defendants acted under the direction of the mother of the child, and although the child, as soon as he knew that his seizure was for the purpose of taking him to his mother, was pleased with it, and was desirous to have the intention carried out."

As to what would constitute the intent to take the child out of the Commonwealth against his will, the judge ruled as follows: " If the defendants were employed to seize the child by a person who had such intent to take the child from the state, and the defendants were ignorant of such intent, still in law they are responsible for such intent on the part of the third person, and will in law be deemed to have had such intent, if they seized the child intending to take him out of the custody of the father and put him into the absolute control of such person, to do as he pleased with him."

The judge farther charged the jury as follows: " I have been requested to instruct you in relation to the rights of parties, upon the supposition that the proceedings of August 4th were the execution of an agreement previously entered into between the mother and the child in order to aid the child to escape. I do

not propose to instruct you upon merely speculative hypotheses. There is no evidence of any such previous arrangement, and no presumption of any such agreement in the absence of evidence, and consequently no instruction on that point is necessary."

The defendants' counsel contended that there was evidence sufficient for the jury to find such previous arrangement; and the evidence on which they relied for this purpose was recited at length in the bill of exceptions, but, under the decision of the court, is now immaterial.

The jury returned a general verdict of guilty, and the defendants alleged exceptions.

*J. G. Abbott & C. F. Blake*, for the defendants. In order to sustain the 1st count, it was incumbent on the government to prove that the taking was against the will of the child. No intent was alleged in this count. The substance of the instruction given was, that if the defendants seized the boy without any knowledge of their purpose on his part, before they entered the room, it would be sufficient. This is not equivalent to proving that the acts were against his consent. The law distinguishes between acts done against consent, and those done without consent. *Rex* v. *Jackson*, Russ. & Ry. 487. *Regina* v. *Williams*, 8 C. & P. 286. *Regina* v. *Saunders*, Ib. 265. The Gen. Sts. *c.* 160, § 30, were intended only to cover cases of actual confinement. A case is not to be brought within a criminal statute, unless it is fully within the spirit of it. 1 Bish. Crim. Law, § 114. *State* v. *Sumner*, 10 Verm. 587. *Hancock* v. *Sturges*, 13 Johns. 331. *The King* v. *Thompson*, 1 Leach C. C. 338. *Commonwealth* v. *Hartnett*, 3 Gray, 450. *Commonwealth* v. *Slack*, 19 Pick. 304. The ruling given can only be sustained on the ground that the child's consent was immaterial. The judge did not leave it to the jury to determine what was his state of mind, and whether he had such a will as to be able to consent. His intelligence was assumed; and the question is, whether in any case aiding a child under twenty-one to do what he wishes to do is an offence. We contend that it was necessary to prove that the seizure was against the actual consent of the boy. See 1 Russell on Crimes, (7th Amer. ed.) 693. 1 East P. C. *c.* 10.

§ 2. 4 Bl. Com. 212. *Commonwealth* v. *Sugland,* 4 Gray, 7 Indecent familiarities with the person of a girl nine years old, who assents, not knowing what she is doing by reason of her tender years, is no assault. *Regina* v. *Read,* 3 Cox C. C. 266. *Regina* v. *Martin,* 9 C. & P. 213, and cases cited. *Rex* v. *Mehegan,* 7 Cox C. C. 145, and cases cited. Upon questions of custody, the law recognizes a child beyond the age of nurture as having a will of his own. *In re Lloyd,* 3 Man. & Gr. 547. *Commonwealth* v. *Hammond,* 10 Pick. 274. *People* v. *Chegaray,* 18 Wend. 637. *Rex* v. *Owen,* 4 C. & P. 236, *n.* 4 Bl. Com. 23, 24. This seizure was consented to on the moment the child knew what it was for. The decision of this court upon the *habeas corpus* did not settle the general custody of the child. The rights of the parents, under Gen. Sts. *c.* 107, § 37, were equal. The father had the actual custody. The mother sent men to bring the child to her; they acted under the belief that she had a right to his custody under the Indiana divorce; and the child went with them willingly, although startled before he knew the purpose of his seizure. This is not the offence contemplated by the statute. If they believed the taking to be legal, they are not liable. *Regina* v. *James,* 8 C. & P. 131. *Regina* v. *Parish,* Ib. 94. *Rex* v. *Forbes,* 7 C. & P. 224. *Commonwealth* v. *Kirby,* 2 Cush. 577. *Commonwealth* v. *Power,* 7 Met. 596. *Commonwealth* v. *Caldwell,* 14 Mass. 330.

The instruction of the court upon the second count substituted the intent of another person for that of the defendants, and was erroneous. *Regina* v. *Cruse,* 8 C. & P. 541. *Rex* v. *Southern,* Russ. & Ry. 444. *Rex* v. *Pollman,* 2 Camp. 231. *Regina* v. *Mazeau,* 9 C. & P. 676. *Rex* v. *Harris,* 7 C. & P. 416. [The argument upon the evidence bearing upon the question of consent is omitted.]

The defendants had a right to show the whole of the testimony of Mrs. Rice, after a portion of it had been introduced. 1 Greenl. Ev. § 468.

*Foster,* A. G., for the Commonwealth. The legal custody of the child was in the father, on the 4th of August 1860. (*a*) By common law. Reeve's Dom. Rel. 315, 335, *n. Commonwealth*

v. *Briggs,* 16 Pick. 203. *State* v. *Richardson,* 40 N. H. 272. *People* v. *Olmstead,* 27 Barb. 9, and cases cited. *People* v. *Humphreys,* 24 Barb. 521. (*b*) By the Maryland decree. *Barber* v. *Root,* 10 Mass. 260. *Warrender* v. *Warrender,* 9 Bligh. N. R. 89, 141. Story Confl. Laws, §§ 205, 226 *b,* 230 *a.* (*c*) By the decision of this court upon the *habeas corpus.* Gen. Sts. *c.* 107, §§ 34–37. *Curtis* v. *Curtis,* 5 Gray, 537. *Regina* v. *Clarke,* 7 El. & Bl. 193. The Indiana divorce was invalid. *Lyon* v. *Lyon,* 2 Gray, 367. The offence charged in the 1st count was complete the moment the child was detained against his will. *Commonwealth* v. *Blodgett,* 12 Met. 56, and cases cited. *Pike* v. *Hanson,* 9 N. H. 491. *Moody* v. *The People,* 20 Illinois, 315. The offence would be the same, even if the boy consented to the abduction ; because a child of such tender years is incapable of giving such consent. *Commonwealth* v. *Taylor,* 3 Met 72. *Commonwealth* v. *Aves,* 18 Pick. 225. *State* v. *Richardson,* 40 N. H. 272. *State* v. *Farrar,* 41 N. H. 53. *State* v. *Rollins,* 8 N. H. 550. *Davenport* v. *Commonwealth,* 1 Leigh, (Va.) 588.

The ruling upon the 2d count may be sustained. All the parties joined in the commission of a crime. The mother had a particular criminal intent, of which they were ignorant. But they in pursuance of the criminal enterprise intended to put the child into her absolute control. They are therefore responsible for her intent. See *United States* v. *Ross,* 1 Gallis. 624 ; *United States* v. *Gibert,* 2 Sumner, 19, 29 ; *State* v. *Morris,* 3 Hawks. (N. C.) 338 ; *Regina* v. *Hurse,* 2 Mood. & R. 360 ; *Regina* v. *James,* 8 C. & P. 132. Responsibility for the precise criminal intent of a confederate may be imputed to the defendants for the same reasons as it may for his actions. See *Regina* v. *Howell,* 9 C. & P. 437.

The exclusion of the irregular cross-examination of Mr. Rice was within the discretion of the judge. *Commonwealth* v. *Savory,* 10 Cush. 535. *Commonwealth* v. *Hills,* Ib. 530.

DEWEY, J. The conviction of the defendants upon the first count of this indictment may be well sustained. The evidence shows an assault upon the person of C. A. T. Rice, and a restraint of his liberty. Every such restraint of the liberty of a

person, if not justified by law, is in the eye of the law a false imprisonment, for which the party was liable to an indictment at common law. Com. Dig. Imprisonment, G. 3 Chit. Crim. Law, 835. The like offence is now made punishable by statute, under the provisions of Gen. Sts. *c.* 160, § 30.

The only question upon this count arises upon the ruling of the court upon that part of it which alleges that the assault and false imprisonment were committed without the consent and against the will of said C. A. T. Rice.

The instructions to the jury as to what would constitute a seizing and imprisonment against the will of the party were certainly sufficiently favorable to the defendants, as they would exclude all previous knowledge of their object, or coöperation in forcibly taking the child from the custody and care of his teacher, on the part of the child himself.

But in our opinion a more stringent ruling upon this point would have furnished no legal ground for exception in matter of law. The party seized and imprisoned was a child of tender years. The legal custody and care of him was in his father. This had been judicially settled in proceedings instituted by the mother, asking for his custody. The adjudication settled the rights of the parties as to the custody of the child, and rendered illegal and criminal any attempt on the part of the mother or agents acting under her to obtain by violence the possession of him.

Being in the actual custody of his father, whose will alone was to govern as to his place of residence and the selection of a teacher and custodian, this child of nine years of age was incapable of assenting to a forcible removal from the custody of his teacher, and a transfer to other persons forbidden by law to take such custody. He was under illegal restraint, when taken away from the lawful custody and against the will of his rightful custodian ; and such taking is in law deemed to be forcible and against the will of the child. This view is in accordance with that taken in the case of *State* v. *Farrar*, 41 N. H. 53, upon a similar indictment. See also *State* v. *Rollins*, 8 N. H. 550. It is always so held in cases heard upon a *habeas corpus*

issued upon the application of one of the parents, alleging im-prisonment and restraint of the child, and seeking his restora-tion; and in the case first cited, it was held equally applicable to the case of an indictment for assault and imprisonment of a child of tender years.

The doctrine of the cases cited from the English reports, of indictments for assaults upon female children, by indecent famil-iarities to which they assented, and in which by reason of such assent the acts done were held not to amount to assaults, we think should not be extended to cases like the present, where the abduction from the lawful custody of the father by violence and strong hand is the substantial offence.

Without limiting the precise age in which a child would be held not to have the legal capacity to assent to such forcible abduction from the custody of the parent to whom such custody had been assigned by an order of this court, the forcible taking away of a child of nine years of age, against the will of his father, or those to whom his father had committed him for nur-ture or education, will authorize a jury to find that the child was illegally restrained of his liberty, whatever may have been his apparent wishes or satisfaction in being withdrawn by force from his place of legal custody, and, in the language of the law, " his place of legal freedom," and placed under the care of those whose custody was illegal restraint.

It was urged in behalf of the defendants that, to make the defendants criminally responsible in such a case, it should be shown by the evidence that they knew that they were violating the father's right of custody. It was, in the opinion of the court, sufficient to charge them with the offence set forth in the first count of this indictment, if they, without right or authority, un-dertook forcibly to seize and, by violence and against the will of the person in whose custody the child was, to remove him there-from. A man must be held to intend that which must be the natural consequences of his acts; and when one has done an act unaccompanied by circumstances which justify its commission, it is a principle of law that he intended to produce the conse-quences which have ensued.

It was suggested by the counsel for the defendants that it was an objection to the instructions as to the first count, that, in reference to that as well as the other counts, the court required the government to show that the act was done with the intent charged in the indictment, whereas no intent is alleged in the first count. This is true, and the probability is that the instructions in reference to the intent were inadvertently applied to the first count, either originally or by an error in the bill of exceptions; as the allegation of intent only applies to the second and third counts. But however that may be, such instructions, if given, furnish no ground for complaint on the part of the defendants, as the only effect they could have was to impose an unnecessary burden upon the government as to the proof necessary to sustain the first count.

The second and third counts present questions of more difficulty, and upon which, in the opinion of the court, the instructions given to the jury cannot be sustained.

These counts contain another element aggravating the offence, and requiring proof beyond that of a naked assault upon and false imprisonment of the child. They charge such assault and false imprisonment to have been done " with intent and design then and there the said C. A. T. Rice to send and cause to be sent from and out of the limits of the said Commonwealth." This allegation must be proved. In many cases we are aware that the criminal intent is to be inferred from the act itself. As already stated, every man is held to have intended the ordinary and natural consequences of his own unlawful acts. But this would not be sufficient here, inasmuch as the alleged intent goes far beyond the natural consequences of an assault and false imprisonment. It adds a distinct purpose and design to effect an object additional thereto. This purpose may be inferred from circumstances, and need not be proved by direct testimony; but it must be found as a fact to have existed, in order to authorize a conviction on the second and third counts. This point is not established by the rule of the common law, holding each responsible for the acts of others in a joint commission of a crime. The mere fact that the defendants were employed to arrest and

forcibly imprison the child, they being wholly ignorant of an intent on the part of their employer, which actually existed, to cause the child to be sent out of the state illegally, would not in law charge them with such intent. Nor does the qualification introduced into the ruling, of "their intending to put the child into the absolute control of the mother," in law make them responsible for an intent of the mother to cause the child to be subsequently sent out of the state.

In the case of a specific intent of the character here charged, the defendants must have knowledge of such intent, to make them criminally liable therefor. It would be open to the jury in such cases, as a matter of fact, to find from all the circumstances that the defendants had such knowledge of the intent and purpose for which they were employed to make the assault and false imprisonment, and that they coöperated in such purpose with their employer. But they are not, as a matter of law, to be charged with such intent, upon the proof of intent on the part of the person employing them, they being found to have been wholly ignorant thereof, and such object not being the natural result or consequence of their employment, or of the acts done by them. *Regina* v. *Cruse*, 8 C. & P. 541.

In the view we have taken of this case, it has become unnecessary to consider particularly the questions raised as to the admission or exclusion of evidence on the trial. All that portion of the testimony offered as tending to show the assent of the child, was irrelevant and immaterial.

The result is, therefore, that the verdict on the first count is sustained, and judgment may be entered thereupon, if the attorney general shall enter a *nol. pros.* upon the other counts.

As to the second and third counts, the case was submitted to the jury under instructions that were erroneous, and the verdict as to those counts must be set aside.