FRANKLIN H. BARKER, as Committee of ANSEL W. SUTLIFF, an Incompetent Person, Respondent, *v.* JAMES H. WASHBURN et al., Appellants.

False imprisonment — when committee of an incompetent person may maintain action of false imprisonment against persons who took the incompetent away from the custody of the committee — instructions to jury in such action — whether incompetent may testify as a witness is within discretion of trial court.

An action of false imprisonment may be maintained by a committee of an incompetent person because his ward has been unlawfully taken and removed from his custody or from the custody of those with whom he has temporarily placed him.

In such an action the court properly charged that "the question is not so much whether (the incompetent person) was seized and detained by these defendants against his own will, but whether he was seized and detained by physical force by these defendants against the will of his committee. If, therefore, there is proof in this case that these defendants have jointly used force to take (the incompetent person) physically away from his committee and against the will of his committee and detained him against the will of his committee, then there might be jurisdiction for a finding on your part that there has been false imprisonment in this action."

The fact that a person was some years previous to a trial adjudged "an idiot and incapable of managing or caring for his own affairs or business" does not absolutely disqualify him as a witness. The determination of his competency is within the power of the trial court.

*Barker* v. *Washburn,* 128 App. Div. 931, affirmed.

(Argued December 6, 1910; decided January 3, 1911.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered November 16, 1908, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Fred. Linus Carroll* for appellants. The verdict in this action cannot be sustained upon the ground that the appel-

lants, or either of them, acted contrary to the will or wishes of the committee of Sutliff. (*Burnett* v. *Bookstaver*, 10 Hun, 481; *Kolpke* v. *Bradley*, 3 App. Div. 391; *Bd. of Excise* v. *Sacrider*, 35 N. Y. 154; *Birdsall* v. *Clark*, 73 N. Y. 73; *Providence Retreat* v. *City of Buffalo*, 29 App. Div. 160; *Burke* v. *Burpo*, 75 Hun, 568.) The trial court committed reversible errors in his charge to the jury, and in his refusals to charge them as requested by appellants' counsel. (*Voltz* v. *Blackmar*, 64 N. Y. 440.)

*Frank Talbot* for respondent. False imprisonment is the proper action in this case and can be maintained by the committee as such. (*Matter of Wing*, 83 Hun, 284; *Kent* v. *West*, 16 App. Div. 496; 154 N. Y. 749; *Koepke* v. *Bradley*, 3 App. Div. 391; 151 N. Y. 622; *Wright* v. *Hayden*, 31 Misc. Rep. 116.) No error was committed in permitting the incompetent to testify as a witness. (*District of Columbia* v. *Armes*, 107 U. S. 519; *People* v. *Washer*, 196 N. Y. 104; *Regina* v. *Hall*, 2 Den. Cr. Cas. 254; *People ex rel. Norton* v. *N. Y. Hospital*, 3 Abb. [N. C.] 229; *Miller* v. *Miller*, 92 Va. 510.)

HISCOCK, J. We are led to the consideration of rather unusual facts in this action which was brought for alleged false imprisonment. It was instituted by the respondent as committee of one Sutliff, an incompetent person, to recover for the alleged unlawful removal and restraint of his ward by the appellants. This conduct on the part of the latter is claimed to have been in violation of the will and wishes both of the incompetent himself and of the respondent as his committee, and apparently the real motive involved in this controversy over the possession of the idiot's body is the purpose to reap a profit on his services as a farm laborer.

Several years before the occurrences in question the respondent was duly appointed committee of said Sutliff on a finding duly made in lunacy proceedings that the latter was " an idiot and incapable of managing or caring for his own affairs or business." For several years the incompetent per-

son was allowed by his committee to live with the appellants and then he was taken away by the former and hired out to a third party. Thereafter as the evidence unquestionably permitted the jury to find, the appellants on two occasions took the incompetent person away under such circumstances as permitted the jury to find that such removal was against the will of the incompetent person, if he had one, and amounted to a false imprisonment. The evidence likewise permitted the jury to find that not only was the removal and retention on these occasions against the will of the committee, although consideration of one of them so far as the committee was concerned was withdrawn from the jury, but that at other times the appellants without physical force against the will and wishes of said committee enticed the incompetent away, and on one occasion aided in concealing his whereabouts from the committee for several weeks. In addition to damages compensatory for the loss of wages which might have been earned by the incompetent, the jury were allowed to award punitive damages, which they apparently did in a small amount.

Many of the questions argued by the counsel for the appellants on this appeal involve mere questions of evidence or familiar and well-settled principles applicable to such an action as this, and I deem it unnecessary to discuss these, contenting myself with saying that we have considered them and approve of the disposition thereof made by the courts below. There are two questions of a less familiar character which may be briefly considered.

The respondent's case was sustained in part by the evidence of the incompetent himself. Basing his claim on the inquisition and on some of the evidence presented in the lunacy proceeding, it is argued by counsel for appellants that that proceeding and the order appointing his committee adjudicated that the incompetent was so completely and permanently devoid of intelligence that he could not be assumed to understand the object and nature of testimony, and that, therefore, he should not have been sworn and received as a witness. In

my judgment this contention is not well founded. The inquisition was found several years before the trial of this action and the committee was appointed on the ground that Sutliff was an idiot and incompetent to manage his own affairs. It did not by any means follow from this as a matter of law that he was, and for years would continue to be, so utterly lacking in intelligence that he could not appreciate at all the relationship and significance of facts and would not be able to understand the obligation of an oath and describe accurately what those facts were. We know both as a matter of definition and of observation that a person who would be judicially declared incompetent and unable to manage his affairs might nevertheless possess sufficient intelligence to be truthful and to describe simple occurrences as they were. When this person was offered as a witness he was interrogated both by the court and counsel for the purpose of determining his competency as a witness, and thereafter the court decided that he should be sworn. This determination was undoubtedly within the power of the trial court and the testimony which was subsequently given and the accuracy of which was tested by long and exacting cross-examination in my judgment bears on its face such marks of intelligence and comprehension as fully justify the disposition which the trial judge made of the question presented to him. If the appellants desired any special instructions to the jury concerning the weight to be given to this evidence they should have asked for them.

The other question to which reference has been made is the more interesting and novel one.

Apparently this case was tried on the theory that the appellants might be found guilty of false imprisonment either because they took possession of and restrained the incompetent person against his will, if he was found to have one, or because they seized and removed him from the custody of the committee.

The court, amongst other things in its charge, said : " I say that this case is somewhat peculiar. I say further that because of this peculiarity in this case (the appointment of a commit-

tee over the incompetent) the question is not so much whether Ansel Sutliff was seized and detained by these defendants against his own will, but whether he was seized and detained by physical force by these defendants against the will of his committee. If, therefore, there is proof in this case that these defendants have jointly used force to take Ansel Sutliff physically away from his committee and against the will of his committee and detained him against the will of his committee, then there might be jurisdiction for a finding on your part that there has been false imprisonment in this action."

He further charged at the request of the appellants themselves: "Plaintiff must prove both an unlawful arrest or seizing and unlawful detention against the will of Ansel W. Sutliff by a preponderance of evidence." I assume that this last charge must be construed as subject to the provision that the jury should take the view that the incompetent was capable of exercising volition.

Exception was taken to that portion of the charge first quoted, and thereby the inquiry is presented whether an action of false imprisonment may be maintained by a committee of an incompetent person because his ward has been unlawfully taken and removed from his custody or from the custody of those with whom he has temporarily placed him. While this specific question does not seem to have been adjudicated in this state, I think that such principles have been established in other analogous cases as lead to an affirmative answer to the question suggested.

*Robalina* v. *Armstrong* (15 Barb. 247) was an action for assault and battery and false imprisonment. The plaintiff was an infant about four years of age and the illegitimate child of one Eliza Gilbert, with whom she had lived since birth. The defendant was the putative father of the child, and had obtained possession of her without the consent of her mother, and refused to restore her to the latter. The court held that the mother and not the father was entitled to the custody of the child, and that inasmuch as the latter against the will of the mother had wrongfully detained and

maintained possession of the infant, an action for false impris-
onment would lie in the name of the infant whose rights were
violated. In thus ruling in the case of an infant too young
to have any volition in the matter the principle was neces-
sarily involved that the unlawful removal of a person having
no will by reason of infancy from the custody and possession
of the person entitled thereto furnished the basis for an action
of false imprisonment.

*People ex rel. Wilcox* v. *Wilcox* (22 Barb. 178) was a habeas
corpus proceeding instituted to obtain the possession and cus-
tody of an infant of such tender years as to be incapable of
exercising volition as to its custody, and therein was approved
the principle cited from *The King* v. *Greenhill* (4 Adol. & E.
642), " where the person is too young to have a choice, we must
refer to legal principles to see who is entitled to the custody,
because the law presumes that, where the custody is, no
restraint exists."

In *People ex rel. Tappan* v. *Porter* (1 Duer, 709) it is said,
"an infant of such tender years as to be incapable of rationally
expressing its wishes, which is all I can understand to be
meant ' by incapable of making a choice,' is of necessity under
restraint, and in order to determine whether the restraint
is illegal, the court must determine to whom the custody
belongs." (p. 719.)

*Commonwealth* v. *Nickerson* (87 Mass. 518) was a criminal
action for assault and battery and was predicated on the acts
of the defendant in taking an infant of the age of nine years
from school where he had been placed by his father who
had his legal custody, in order to deliver him into the cus-
tody of the mother who was not entitled thereto. The court
sustained the action and amongst other things said : " Being
in the actual custody of his father, whose will alone was to
govern as to his place of residence and the selection of a teacher
and custodian, this child of nine years of age was incapable
of assenting to a forcible removal from the custody of his
teacher and a transfer to other persons forbidden by law to
take such custody. He was under legal restraint, when taken

from the lawful custody and against the will of his rightful custodian; and such taking is in law deemed to be forcible and against the will of the child. * * * Without limiting the precise age in which a child would be held not to have the legal capacity to assent to such forcible abduction from the custody of the parent to whom such custody has been assigned * * * the forcible taking away of a child of nine years of age against the will of his father, or those to whom his father had committed him for nurture or education, will authorize a jury to find that the child was illegally restrained of his liberty, whatever may have been his apparent wishes or satisfaction in being withdrawn by force from his place of legal custody * * * and placed under the care of those whose custody was illegal restraint." (See, also, *Mercein* v. *People ex rel. Barry*, 25 Wend. 64; *People ex rel. Pruyne* v. *Walts*, 122 N. Y. 238.)

So far as the principles thus announced are concerned, I see no reason for distinguishing those cases from the present one. There was no objection by the appellants to the theory on which the jury were permitted to find them guilty of false imprisonment because they had violated the wishes and will of the incompetent, if he was possessed of them, but they have expressly and repeatedly argued that the incompetent had no mind or will whose violation could be made the basis of such an action as this. If the jury took that view and concluded that the incompetent like a child of tender years had no such will as would enable him to exercise intelligent and legal volition as to his custody, then the case was brought exactly within the principles of the cases to which reference has been made and on this theory I think the trial judge committed no error in giving the instructions which have been quoted, but that here as elsewhere with much clearness and fairness he amply protected all the rights of the appellants.

The judgment should be affirmed, with costs.

CULLEN, Ch. J., HAIGHT, WERNER, WILLARD BARTLETT, CHASE and COLLIN, JJ., concur.

Judgment affirmed.