John D. Bennett, S.
In this probate proceeding, the object-ant moves to take the deposition of a witness pursuant to section 288 et seq. of the Civil Practice Act. The moving papers show that the witness is 85 years of age and is suffering from congestive heart failure and other disabilities which, in the. opinion of his physician, render him “ too sick and infirm to attend Court ”. An earlier application to examine the same witness was made pursuant to section 73 of the Surrogate’s Court Act. That application was denied without prejudice to renewal (Matter of Ludlam, 154 N. Y. S. 2d 606).
The affidavits in opposition urge that as a prior condition to the granting of the motion the court “ pass upon the witness’ mental condition and his. competency to testify ”. It is urged that the material submitted in an affidavit of one of the proponents indicates “ that the witness is irrational ”. The reply affidavit of the objeetant makes these, facts subject to dispute. It is undisputed, however, that the witness is not an adjudicated incompetent, if indeed he is an incompetent. It would seem that this fact would determine the issue here and requires that the motion be granted.
The papers in opposition place reliance upon section 365 of the Civil Practice Act, which reads in part as follows: ‘£ The court or officer may examine an infant or a person apparently of weak intellect produced before it or him, as a witness, to ascertain his capacity and the extent of his knowledge ’ ’.
In Hand v. Burrows (23 Hun 330) an application was made to take, by commission, the testimony of a witness who had been committed for insanity. The court after pointing out that when a witness, alleged to be insane, is produced in court at a trial, a preliminary examination by the judge of the lunatic and any competent witnesses is required. The court held, however, that *161 it was proper to permit a commission to issue without prior investigation, stating (p. 331): “In considering the rule, an embarrassment at once presents itself, because, if the presence of the witness be held to be indispensable, then the party seeking* his testimony must lose the supposed benefit of it from the inability to compel his attendance, which does not seem to be a just result; and this can only be avoided by issuing the commission, and upon its return, and at the time of its presentation to the justice presiding at the trial, then initiating the investigation already suggested as to the mental condition of the witness. This may be done, as already suggested, by an examination of his answers, and by the testimony of other witnesses who have information on the subject.” In Barker v. Washburn (200 N. Y. 280, 283) the court discussed the testimony of an adjudged incompetent. “ The inquisition was found several years before the trial of this action and the committee was appointed on the ground that Sutliff was an idiot and incompetent to manage his own affairs. It did not by any means follow from this as a matter of law that he was, and for years would continue to be, so utterly lacking in intelligence that he could not appreciate at all the relationship and significance of facts and would not be able to understand the obligation of an oath and describe accurately what those facts were. We know both as a matter of definition and of observation that a person who would be judicially declared incompetent and unable to manage his affairs might nevertheless possess sufficient intelligence to be truthful and to describe simple occurrences as they were. When this person was offered as a witness he was interrogated both by the court and counsel for the purpose of determining his competency as a witness, and thereafter the court decided that he should be sworn.”
In Fritsch v. Central Trust Co. (262 App. Div. 551) the Appellate Division, Fourth Department, applied the rule requiring a preliminary examination of an adjudicated incompetent to an application for an examination before trial. There the plaintiff, whose examination was sought, had been committed to a State hospital for the insane. The court said (p. 552): “ A court may permit an incompetent person to give testimony if the court is satisfied that the incompetent has sufficient mental ability to understand the obligation of an oath and to know the relationship and the significance of the facts concerning which he is to be examined and to accurately describe these facts. The court, however, should never grant leave to examine an incompetent, capable of being produced in court, until he has satisfied himself, after a preliminary examination of the incompetent, *162 that he is of sufficient mental ability to give testimony. (Barker v. Washburn, 200 N. Y. 280, 283.) A preliminary examination of an incompetent person by a court is in the nature of a condition precedent to the granting or denying of an order to examine him as to the facts of an accident in which he was an actor. The question of an incompetent’s mental stability should not be determined upon affidavits. Until such a preliminary examination has been had and the court has passed upon the question of an incompetent’s mental stability, the court is not in a position to pass upon the merits of a motion to examine an incompetent as to specified matters.”
In De Rosa v. Viggiano (81 N. Y. S. 2d 481) in which a motion was made to perpetuate the testimony of an adjudicated incompetent who, it was stated, was 74 years of age, feeble and who potentially would not survive the trial of the action, the court followed the Fritsch case and provided for a preliminary examination before a referee before determining the motion.
The cases cited indicate quite clearly that where the testimony of an adjudicated incompetent is in question at some stage in the proceeding and prior to its receipt in evidence, a preliminary inquiry is required. As a corollary to this proposition it may be stated that the fact that a prospective witness has been adjudicated an incompetent does not by itself render him incompetent to testify as to all matters.
The cases would indicate that preliminary investigation is not required with respect to a witness alleged to be incompetent who has not been so adjudicated.
In Quarterman, v. Quarterman (179 Misc. 759) the defendant whose examination was sought, although committed to a State hospital pursuant to the provisions of the Mental Hygiene Law, had not been adjudicated an incompetent. The court said: “ In that situation the defendant continued to control her property at all times and to have legal capacity to sue and be sued, and, consequently, she may be examined in a suit brought against her. ’ ’
See, also, La Greca v. Giaquinta (129 N. Y. S. 2d 565, 567) where it was stated: ‘ ‘ The husband asserts that in 1921 he was married in Brooklyn to one Francesca Liccardi; that she is still his wife and resides in Lipari, Italy; that she is in good health except that she ‘ is suffering from a mental disease and deponent is advised that she has lucid intervals during which she can give testimony. ’ Since it does not appear that there has been any official adjudication of incompetency she may be examined.”
*163 The rule as stated in the cases with respect to alleged non-adjudicated incompetents would therefore preclude the necessity of a preliminary investigation. Even if this were not so, it would be unwarranted to extend the rule stated in the Fritsch case to the instant set of facts.
The motion is granted.
Submit order on notice, setting forth the time and place of the examination and the officer before whom the deposition is to be taken.