MARY ELLARSON, Respondent, *v.* DAVID ELLARSON, Appellant.

Third Department, July 7, 1921.

Witnesses — competency — preliminary examination on ground of insanity — credibility — insanity may be shown on cross-examination — extent of cross-examination — not proper to show that witness was at one time in observation ward of hospital — insanity is question of fact — court has discretion as to examination and extent thereof — error for court to rule broadly that insanity cannot be shown on question of credibility — statement made by witness as to third person not admissible on credibility.

The opposing party may object as to the competency of a witness and then it becomes the duty of the court to inquire as to the capacity of the witness before he is sworn, and upon this examination the court may make a full and complete inquiry of the proposed witness, or of others, as to the mental capacity of the witness.

After a witness has passed the examination by the court and been sworn, his mental capacity may be tested and considered as bearing upon his credibility and his degree of intelligence, and his mental condition may be disclosed by cross-examination, but this examination is limited by the usual rules governing cross-examination.

On such cross-examination for the purpose of testing the mental capacity of the witness, testimony that at one time witness was in an observation ward of a hospital for the purpose of observing her mental condition is not proper.

The alleged insanity of a witness is a question of fact and must be tried upon proper evidence and it is proper to go into the history of the supposed insane witness' mind, before, at and after the occurrence and at the time of the trial, and though this raises a collateral issue, which may take a long time to try, yet, if necessary to the full development of the truth, the party charging insanity is entitled to an opportunity to prove it, if he can.

While the court, after a witness has been sworn, will be allowed a wide discretion in determining to what extent the inquiry as to insanity may go, and whether it may be entered upon at all, and while it must appear that, in the interest of truth and justice, such inquiry is necessary, before the court is required to permit the trial of this collateral fact, it was error for the court to rule broadly that under no circumstances was the question of the insanity of the witness to be gone into on the question of her credibility.

Evidence as to what the plaintiff, a witness, had stated in reference to a third person who was not connected with the action was properly excluded.

APPEAL by the defendant, David Ellarson, from a judgment of the Supreme Court in favor of the plaintiff, entered in the

office of the clerk of the county of Schoharie on the 7th day of January, 1921, on the verdict of a jury, and also from an order, entered in said clerk's office on the 21st day of January, 1921, denying defendant's motion to set aside the verdict and for a new trial made upon the minutes.

*F. Walter Bliss* [*Wallace H. Sidney* of counsel], for the appellant.

*Alberti Baker*, for the respondent.

VAN KIRK, J.:

The action was brought to recover $360, alleged to be the fair value of four cows belonging to plaintiff and wrongfully sold by the defendant.

The defendant, appellant, complains that he has been prejudiced because the attorney for the plaintiff persisted in asking questions, not material or proper, which would have a tendency to influence the jury unfavorably. The plaintiff is the mother of the defendant. There had been differences between the plaintiff and her husband (father of defendant) and the questions complained of referred to their separation and the payment of alimony. Answers to these questions were all excluded and the jury were instructed to disregard the questions and any inferences to be drawn therefrom. But the persistence in asking similar questions, after the plain ruling of the court, may have influenced the jury.

The defendant also charges error because he was not permitted to examine witnesses and receive their answers to questions as to plaintiff's mental condition. Objection to the competency of the plaintiff before she was sworn was not taken. The following appears in the record, in the cross-examination of the plaintiff: " Q. What department of the hospital were you in? Mr. Baker: I object to that as immaterial, incompetent, improper and inadmissible for any purpose whatever. The Court: It is cross-examination, I will permit it. [Objection overruled.] I will hold, however, that they cannot litigate the question of this woman's mental capacity here. [Defendant excepted.] Q. Where were you in the hospital, what part of it? A. They sent me down in the insane room and then they sent me up to one of the other rooms. The Court: I instruct the jury to disregard

the statement whether or not this woman was in an insane room for observation, as that is not a question that can be litigated in this action here. Mr. Sidney: We take an exception. * * * Q. Did you threaten to burn the buildings up there on the farm? Mr. Baker: Objected to as improper, incompetent and inadmissible for any purpose. [Objection sustained.] Q. Did you attempt to commit suicide up there? Mr. Baker: I object to it. The Court: Objection sustained. You can't litigate these questions here. We are litigating the title to these four cows, and that is the only thing. Q. Did you also state that you only hoped your husband would live long enough so that you could see him in the poor-house? Mr. Baker: I object to that. The Court: Objection sustained. The only question here is whether she owned these cows. Mr. Sidney: All these things affect her credibility. The Court: Not the slightest. It doesn't make any difference with her title to these four cows." Dr. Burgett was called by the defendant and was asked: " Q. Did you in the presence of Dr. Diesserboch and a Miss Near and Ozias Ellarson examine this plaintiff some time in the early part of last year, examine her as to her mental condition? A. Yes. Mr. Baker: I object to that as illegal and improper. The Court: I strike out that remark and I instruct the jury to disregard it, and I sustain the objection. [Defendant excepted.] The Court: Gentlemen of the jury, I instruct you it is a matter of no importance whether this woman has been examined by any examiners or not. It has not been pleaded, and there is no allegation before this court that she has been adjudged to be mentally unsound, and so far as the law is concerned, where that has not been done, when she comes in court she is presumed to be of sound mind and condition, and her mental condition cannot be attacked here in this way. You may have an exception. Mr. Sidney: We simply offer it to affect the credibility of this plaintiff. The Court: No, it doesn't affect her credibility. You had a right to cross-examine her upon that question, or you have a right to show that she made contradictory remarks to those made upon the stand, or to show that she is not to be relied upon, or to show that she has been convicted of a crime, under those provisions for testing the credibility of a witness."

When a witness is called for a party, the opposing party may object that the witness is incompetent and then it becomes the duty of the court to inquire as to the capacity of the witness before he is sworn. Upon this examination the court may make a full and complete inquiry of the proposed witness, or of others, as to the mental capacity of the witness. (Code Civ. Proc. § 850.) In *District of Columbia* v. *Armes* (107 U. S. 519, 521) the court said: " The general rule, therefore, is, that a lunatic or a person affected with insanity is admissible as a witness if he have sufficient understanding to apprehend the obligation of an oath and to be capable of giving a correct account of the matters which he has seen or heard in reference to the questions at issue; and whether he have that understanding is a question to be determined by the court, upon examination of the party himself, and any competent witnesses who can speak to the nature and extent of his insanity." In *Wright* v. *Southern Express Co.* (80 Fed. Rep. 85) it was held, as stated in the head note: " Where one who has been adjudged to be insane is offered as a witness, the inquiry for the court on the preliminary examination is limited to his understanding of the obligations of an oath and ability to comprehend the examination as a witness, and, if he can stand this test, the effect of his alleged insanity upon his credibility is for the jury."

Having passed the examination by the court and been sworn, the mental capacity of the witness may be tested and considered as bearing upon her credibility and her degree of intelligence. In Wigmore on Evidence (Vol. 2, § 932) it is said: " The existence of a derangement of the sort termed insanity is admissible to discredit, provided that it affected the witness at the time of the affair testified to, or while on the stand, or in the meantime so as to cripple his powers of recollection." In 40 Cyc. 2573, it is said: " The mental capacity of a witness is proper to be considered as bearing upon his credibility and his lack of intelligence may tend to discredit him." The mental condition of the witness may be disclosed by cross-examination, but this examination must be limited by the usual rules governing cross-examination. The questions asked in this case and the answers excluded are above quoted. We think it was not error for the court

to exclude testimony that at one time plaintiff was in an insane room in the Albany hospital. She may still have been entirely sane, though once having been committed to an insane room. The answer was properly excluded for the same reason that answers to inquiries whether a witness has been arrested are excluded.

But the court ruled broadly that no evidence could be offered tending to attack the sanity of the plaintiff, witness. He repeated that this question cannot be tried in this case; "we are litigating the title to these four cows and that is the only thing.' The defendant's attorney was not remiss in failing to ask such further questions as he may have desired in defiance of this broad ruling of the court. The objection to the question to Dr. Burgett and the ruling of the court raised the question directly. The weight of authority seems to be that the alleged insanity of a witness is a question of fact and must be tried upon proper evidence, and the character of the evidence on this question cannot be different however the question is raised. It is proper to go into the history of the supposed insane person's mind, before, at and after the occurrence and at the time of trial. It is held that, though this raises a collateral issue, which may take a long time to try, yet, if necessary to the full development of the truth, the party charging insanity is entitled to an opportunity to prove it, if he can. (*Holcomb* v. *Holcomb,* 28 Conn. 179; *Regina* v. *Hill,* 5 Eng. Law & Eq. 547; *Rivara* v. *Ghio,* 3 E. D. Smith, 264, 268; *Livingston* v. *Kiersted,* 10 Johns. 362.)

The court, after a witness has been sworn, will be allowed a wide discretion in determining to what extent the inquiry as to his sanity or insanity may go, and indeed whether it may be entered upon. It must appear that, in the interests of truth and justice, such inquiry is necessary, before the court is required to permit the trial of this collateral fact. It is error to hold that the fact may not in any event be tried. It is true that it does not appear whether or not the defendant had further evidence to offer upon this subject; but he was apparently in the midst of his examination stopped by a ruling which we think was erroneous.

The evidence in the case was chiefly that of the plaintiff.

She claims that these cows were given to her when calves. She is unable to fix the time within ten or fifteen or twenty years. She identifies the cows chiefly by color and, except one of them, the color described by her would be similar to that of Holstein cows generally. Considering the very unsatisfactory condition of the evidence, we cannot hold that this ruling was not prejudicial to the defendant, and, therefore, that a new trial should be had.

The exclusion of the answer to the question " Did you also state that you only hoped your husband would live long enough so that you could see him in the poor-house? " was not error. The husband was not, a party to the action and her feeling toward her husband was, therefore, not a subject of inquiry.

The judgment and order appealed from should be reversed and a new trial granted, costs to appellant to abide the event.

All concur.

Judgment and order reversed and new trial granted, with costs to appellant to abide event.