Gabrielli, J.
The question presented is whether unsworn testimony may be received and given effect in an administrative disciplinary proceeding under 'section 75 of the Civil Service Law. The problem arises out of the dismissal of the petitioner, an attendant at Willowbrook State Hospital for the Mentally Retarded, found to have struck a patient. The evidence against petitioner consisted in large part of the eyewitness testimony of the victim and another patient, both of whom were found by the hearing examiner to be incapable of understanding the nature of the oath.
Petitioner, a ward attendant with 17 years experience at the Willowbrook facility, was charged with striking a 22-year-old female resident, Beverly Cash, “ with a 'scrub or broom handle *186 while [the resident] was sitting in a chair in the dayroom of Ward 234 and oaus[ing] her to have a laceration of the scalp and forehead necessitating 13 sutures.” At the hearing it was established that a group of patients, including Beverly Cash, were proceeding from the dayroom down the back stairs to the outdoors shortly after 9:30 a.m. An attendant at the back door testified that Beverly came out holding a towel on her head and went around to the front of the building. Another attendant testified to seeing Beverly pass by on her way around the building and that she had blood on her head. Beverly went to the supervising attendant in her office at the front of the building. The supervisor testified that Beverly had a bloody 'towel on her head and that she took her to the treatment room where a physician treated the wound and closed it with some 13 stitches. The physician described the wound and testified that it could easily have been made by the handle later found and identified as the weapon. The physician further testified that a patient, one Eileen Cassels, told him that morning that she had seen the incident and that petitioner had hit Beverly while Beverly was seated in a chair. This witness to the event, in fact, brought to the physician a broom handle three and a half to four feet long which she asserted was the weapon used by petitioner. Eileen Cassels was, however, unavailable to testify at the hearing. The physician’s hearsay testimony as to what Eileen saw was buttressed by his observation that when she related these events to him she was in good form at the time and functioning at a high level.
There was further testimony to the effect that 10 minutes prior to the time Beverly emerged from the building she was seen sitting in the dayroom and that she was then perfectly all right. The supervisor and the physician both testified that when asked what happened Beverly said that petitioner had hit her in the head with a stick. These statements were made when Beverly came for help within minutes after the attack.
Preparatory to putting Beverly and the other patient eyewitness, Louise G-ruzo, on the stand, the school psychologist testified that Beverly’s I.Q. was 43, that she had a mental age of a four to six year old, and that she knew the difference between telling the truth and telling a lie. He stated that “ Beverly does relate to reality. She does know certain things. *187 What is going on around her and she can relate to them. I didn’t find her to be psycho tie or irrational. On a very concrete level, she can explain to you she’s at Willowbrook and she has been here for a long time. She is capable of knowing what is going on in a particular setting on a very minimal basis, and the same thing with Louise Gruzo.” Additionally, with respect to Louise Gruzo, 25 years of 'age, the psychologist testified that she had an I.Q. of 50, a mental age slightly higher than Beverly’s, and that she knew what it was to tell a lie.
When Beverly was called to the stand the hearing examiner conducted a voir dire and concluded that it would be “ senseless ” to administer an oath. Over objection by petitioner’s counsel, however, the hearing examiner allowed Beverly to testify unsworn. In response to direct questioning she stated that she remembered when she was hit on the head, where and how she was hurt, the object that caused her injury, and that petitioner was the person who struck her. When asked why petitioner struck her, she retorted, “ I cursed her out.” She further testified that an eyewitness was present at the time of the assault. Beverly’s testimony remained unshaken after cross-examination.
The attendant at the rear door who testified to having seen Beverly emerge from the building holding a towel to her head also testified that at that time petitioner was upstairs sending the patients down to her and that petitioner’s duties included getting the patients downstairs and to see that everyone got out. Petitioner testified in her own defense and said she did not know how Beverly was injured; and that she, petitioner, was in the bathroom trying to dress three other patients at the time of the injury. She asserted that she was unaware of Beverly’s injury until Beverly had left the building, and denied that she had struck Beverly in response to being called a name.
The hearing examiner deferentially discredited petitioner’s testimony in his findings where he stated: “ I am quite convinced after reading the testimony that both of these patients, one of whom is the patient who was assaulted, have full knowledge of what they were saying and what they saw, and they were able, satisfactorily to me, to indicate that the respondent did in fact strike this Beverly Cash child.” He went on to note *188 the medical foundation as to the competency of these witnesses and concluded that the two patient witnesses had the mental ability to put into words what they saw.
The Appellate Division summarily annulled the determination dismissing petitioner and relied on the following passage from Matter of Sowa v. Looney (23 N Y 2d 329, 333): “ Compliance with the technical rules of evidence is not required in disciplinary proceedings before a Police Commissioner or other administrative officer. (Civil Service Law, § 75, subd. 2; Matter of Roge v. Valentine, 280 N. Y. 268, 278-280; cf. 1 N Y Jur., Administrative Law, § 121.) Generally, all relevant, material and reliable evidence which will contribute to an informed result 'should be admissible in disciplinary proceedings for there is a public interest in ascertaining the truth of charges brought against public employees. (Cf. 1 Benjamin, Administrative Adjudication in the State of New York [1942], pp. 171-181; cf. 2 Davis, Administrative Law Treatise, §§ 14.01-14.07 [1958].) Nevertheless, no essential element of a fair trial can be dispensed with unless waived without rendering the administrative determination subject to reversal upon review.”
We think the Appellate Division misapplied those salutary rules to the facts in this case. Relying, apparently, on only the last sentence above quoted, the court held that reliance on the unsworn testimony of the two patient witnesses deprived petitioner of a fair hearing.
All adults are presumed competent to testify, and commitment to a mental institution does not automatically render a witness incompetent (People v. Rensing, 14 N Y 2d 210, 213; Barker v. Washburn, 200 N. Y. 280; Richardson, Evidence [10th ed.], § 389). Certainly, an adverse party may put competency in issue and in such a case the matter is addressed solely to the discretion of the hearing officer who may examine the witness about to testify and any other person who can establish the mental capacity of the witness (Aguilar v. Slate of New York, 279 App. Div. 103,105; cf. District of Columbia v. Armes, 107 U. S. 519, 522). Petitioner argues that the inability of a witness to understand .the nature of the oath goes to the essence of his competency to testify, thus rendering his testimony inherently unreliable. There is, however, a clear distinction between the formalistic oath, on the one hand, and the concept *189 of testimonial capacity on the other. A witness is said to ¡be capable when he has the ability to observe, recall and narrate, i.e., events that he sees must be impressed in his mind; they must be retained in his memory; and he must be able to recount them with sufficient ability such that the presiding official is satisfied that the witness understands the nature of the questions put to him and can respond accordingly, and that he understands his moral responsibility to speak the truth (2 Wigmore, Evidence [3d ed.], § 492 et seq.).
An oath, on the other hand, has to some, become formalistic; and also to some has become a perfunctory, ritualistic statement made prior to testifying, its purpose having been questioned (see 6 Wigmore, Evidence [3d ed.], § 1827 and authorities therein cited). The practice, nevertheless, has been carried on in civil and criminal cases to serve two functions: (1) to awaken the witness to his moral duty to tell the truth, and (2) to deter false testimony by providing a legal ground for perjury prosecutions (see Matter of Hecht v. Monaghan, 307 N. Y. 461, 474; Matter of Greenebaum v. Bingham, 201 N. Y. 343, 347). However, it has long been realized that the absence of the oath need not necessarily mean that the unsworn witness could not be expected to speak the truth. Hence, the presumption is indulged that an oath was properly taken unless the record showed otherwise (People ex rel. Ballard v. Moss, 34 App. Div. 475) and it has also been held that a litigant cannot complain that his own witnesses were not sworn (People ex rel. Ballard v. Moss, 38 App. Div. 630), or that a recalled witness was not resworn (People ex rel. Niebuhr v. McAdoo, 184 N. Y. 304). In fact, the failure to object to unsworn testimony serves to waive any argument that the testimony was not properly admitted (2A Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 2309.05). Speaking of unsworn witnesses in a zoning variance case, Judge Cakdozo stated: ‘ ‘ It is enough that reasonable men could view them as entitled to probative effect. ’ ’ (People ex rel. Fordham M. R. Church v. Walsh, 244 N. Y. 280, 287.)
Since we are considering the testimony of witnesses said to have the mental capacity of children, it is interesting to note that in criminal proceedings the court, if he is not satisfied that a child under the age of 12 understands the oath, may nevertheless allow in the child’s unsworn testimony if he is satisfied *190 that the child possesses sufficient intelligence and capacity (CPL 60.20, subd. 2). That a conviction may not rest solely on such testimony (subd. 3) does nothing to lessen the fact that such evidence is admissible, and the analogy has added force when we apply it to an administrative proceeding where it is specifically provided that “ [compliance with technical rules of evidence shall not be required ” (Civil Service Law, § 75, subd. 2).
We today hold that in an administrative proceeding such as this where the administration of an oath would be unavailing for the purpose for which an oath is normally administered, unsworn testimony may be received provided a sufficient foundation exists to support the hearing officer’s determination that the witness possesses rudimentary testimonial capacity. In Fleury v. Edwards (14 N Y 2d 334) it was held that the exclusion from a civil case of certain testimony given at a motor vehicle hearing on hearsay grounds was error. In a concurring opinion, joined in by the whole court, then Judge Fuld wrote: “ despite their responsibility to come as close as possible to the truth, the courts in civil cases are required to deny themselves the best available hearsay evidence * * * The common law of evidence is constantly being refashioned by the courts of this and other jurisdictions to meet the demands of modern litigation * * * Absent some strong public policy or a clear act of pre-emption by the Legislature, rules of evidence should be fashioned to further, not frustrate, the truth-finding function of the courts ” (pp. 340-341; citations omitted). In light of this holding in a civil action, there ought not be and, indeed, there is no justification in imposing a more rigid standard in administrative disciplinary cases in the face of legislative direction that there is no necessity for the imposition of the technical rules of evidence. We note also a recent holding by the United States Supreme Court that the admission of hearsay evidence, unsworn and unavailable to cross-examination, was not violative of due process and constituted substantial evidence in a Social Security Act disability benefits hearing (Richardson v. Perales, 402 U. S. 389).
Having concluded that unsworn testimony is admissible in administrative proceedings, given a proper foundation, we hasten to add that by so doing we intend no departure from the *191 substantial evidence test. It may well be that in some cases unsworn testimony, either alone or in context with all the other evidence, may not amount to substantial evidence when considered in light of the whole record. Here, however, there is no such deficiency in the evidence. A foundation was laid by an expert witness who -gave his opinion that both patient witnesses were capable of relating experiences happening to them, and there was no proof to the contrary. There was also hearsay testimony, admissible in this proceeding, that Beverly named petitioner as her assailant immediately after the occurrence and that another patient, who did not testify, reported the incident to the physician and named petitioner as Beverly’s assailant. There is, also, considerable circumstantial evidence in support of the challenged testimony. It was established by competent witnesses that Beverly was in her ward and uninjured at approximately 9:30 a.m. ; that a short time later she was injured; that the sole attendant in the ward was petitioner; and, that although petitioner was in charge and responsible for the activities of the patients at that time, she could not explain how Beverly was injured. Evidence indicated that Beverly’s injury resulted from a blow by a hard object and the broom handle was found at the scene and produced for the physician that morning. Also, Beverly did not turn to petitioner for help, she ran out of the building and around to the front to seek aid from others. In addition the fact finder could, in light of all the facts, conclude that it would be hardly feasible that Beverly and Louise could have conspired to blame petitioner for an accident. The time periods involved militate against such conjecture. As Judge Bergan said in People v. Wachowicz (22 N Y 2d 369, 371): “ It is an accepted rule that the corpus delicti may be established by circumstantial evidence [citations].” Finally, it need hardly be noted that the hearing examiner saw and heard the witnesses, observed their intelligence range and their comprehension of the questions and the nature of their responses. His assessment of these matters is entitled to considerable deference.
As a subordinate and valid motivation for our holding, we observe that policy considerations indicate the direction we should take. The right of petitioner to a fair hearing is undeniable. However, we cannot overlook the rights of institutional *192 residents, especially those incapable of eloquent expression and abstract thought. These people also deserve a fair hearing. To deny them the right to complain of their treatment because they lack the ability to conceptualize the. nature of an oath would be blinding ourselves to reality.*
The judgment of the Appellate Division should be reversed and the administrative determination reinstated.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
Judgment' reversed," witho.ut costs, and the administrative determination reinstated.

 Courts have become increasingly concerned over conditions in mental institutions such as Willowbrook. (See New York State Assn. for Retarded Children v. Rockefeller, 357 F. Supp. 752, 756; Wyatt v. Stickney, 344 F. Supp. 387; Herr, Retarded Children and.the Law: Enforcing the Constitutional Rights o£ the Mentally Retarded, 23 Syracuse L. Rev. 995; Murdock, Civil Rights of the Mentally Retarded — Some Critical Issues, 7 Family L. Q. 1.) Careful attention has been paid to cases involving employees who. have been-charged with assaulting institutional residents. (Matter of Smart v. Francis, 43 A D 2d 623, revd. 35 N Y 2d 872; Matter of Merchant v. New York State Dept. of Mental Hygiene, 41 A D 2d 588; Matter of Reid v. Greenberg, 40 A D 2d 1078; Matter of Traber v. Feinstein, 39 A D 2d 643, affd. 32 N Y 2d 860; Matter of Blackmon v. Feinstein, 39 A D. 2d 642.)