In the Matter of JOHN E. SCHADT, Petitioner, v THOMAS J. SARDINO, as Police Chief of the City of Syracuse, et al., Respondents.

Fourth Department, May 30, 1975

*Priest & Schultz (Richard D. Priest* of counsel), for appellant.

*Edward P. Kearse, Corporation Counsel (John R. Harder* of counsel), for respondent.

WITMER, J. In this article 78 proceeding petitioner seeks annulment of the determination of Thomas J. Sardino as Chief of Police of the City of Syracuse (respondent), made December 7, 1970, dismissing him as a patrolman in the Syracuse Police Department. We reverse and annul the determination because it is based exclusively on informal statements by two witnesses who did not appear before the hearing officer and subject themselves to cross-examination by petitioner's counsel.

The proceeding grew out of alleged police brutality, said to have occurred in the City of Syracuse on August 24, 1970 after a group of men smashed store windows in the 1300 block of South Salina Street. Some description of the offenders was broadcast over police radio at once, and shortly a police car picked up four Puerto Rican men and brought them to the scene of the earlier disturbance. The officer who had broadcast the description looked at these men and concluded that they were not among the offenders. Officers Finch and Planck took the men away, but before releasing them they drove them to an alley and administered a beating upon them to such an extent that all four of them went to a hospital for treatment.

These victims made complaint against the city's police force, but they could not identify their assailants. Respondent Chief of Police investigated the complaints and he learned that Officers Finch, Planck and petitioner were at the scene where the windows had been broken when the four men had been brought in for identification. Upon interrogation these officers denied knowledge of any brutality, and Officer Finch signed an affidavit to that effect.

Through other sources respondent became convinced that Officers Finch and Planck, at least, and probably petitioner were guilty of administering the beatings, and he brought each of them before him for interrogation, recording his questions and their answers on tape after first advising each of them that their statements were being taped. Officer Finch's uncle was also a police officer and he advised Finch to change his story and admit his complicity in the beatings in order to save his job. When the officers were severally brought before respondent for questioning, he sternly warned each of them that he had information incriminating them and that they should tell the truth or their jobs would be in jeopardy. Nevertheless, in the early stage of the questioning Officer Finch twice denied any part in or knowledge of the beatings. He then recanted, however, and stated that he did participate in beating the victims, and he said that petitioner did also. Officer Planck gave similar testimony.

Petitioner, however, steadfastly denied participating in the beatings or having any knowledge thereof. He stated that he left the scene of the window breaking and drove directly back to the police station and did not see the four victims after leaving for the station. Despite repeated admonitions by respondent, petitioner maintained his innocence and his ignorance of the alleged brutality.

At the departmental hearing which was held no witness gave testimony implicating petitioner. The only direct testimony concerning petitioner was that he did appear in uniform at the scene of the window breaking and was there when the four victims were brought in and exonerated. The city offered into evidence the taped statements which Officers Finch and Planck had previously given before respondent. Before the tapes were received into evidence counsel for Officers Finch and Planck had them testify before the hearing officer concerning the circumstances under which these statements were made, and they asserted that the tapes were involuntarily

made and were inadmissible against them on the hearing. Officers Finch and Planck did not submit themselves for cross-examination by petitioner's counsel concerning their taped statements, and the city did not call them for that purpose. Over objections by petitioner's counsel the hearing officer received the tapes into evidence against all three officers.

The hearing officer found that the three officers were guilty of most of the charges against them and recommended that each officer be dismissed. Respondent accepted the recommendation with respect to petitioner and dismissed him, but he only suspended Officers Finch and Planck for 60 days without pay.

Petitioner contends that he did not receive a fair hearing and that the punishment of dismissal administered to him was excessive and unequal in comparison with that accorded to the other two officers. Because we agree with petitioner's first contention, we do not reach the question of the punishment.

Although administrative hearings are not limited to strict court rules in the reception of evidence, it is basic that the determination must be supported by some substantial evidence which is acceptable in a court of law (*Matter of Brown v Ristich,* 36 NY2d 183; *Matter of Carroll v Knickerbocker Ice Co.,* 218 NY 435, 440; *Matter of Reynolds v Triborough Bridge & Tunnel Auth.,* 276 App Div 388, 390; and see *Matter of Stammer v Board of Regents,* 287 NY 359, 365). A hearing must accord a fair trial to the person charged, and the evidence must be convincing to reasonable men. In *Matter of Hecht v Monaghan* (307 NY 461, 470) the court said:

"The hearing held by an administrative tribunal acting in a judicial or quasi-judicial capacity may be more or less informal. Technical legal rules of evidence and procedure may be disregarded. Nevertheless, no essential element of a fair trial can be dispensed with unless waived. That means, among other things, that the party whose rights are being determined must be fully apprised of the claims of the opposing party and of the evidence to be considered, and must be given the opportunity to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal" (citations omitted). (See, also, *Matter of Sowa v Looney,* 23 NY2d 329, 333; *Matter of Heckt v City of Lackawanna,* 44 AD2d 763; *Matter of Shields v Hults,* 21 AD2d 745.)

In the record in this case admittedly there is no evidence that petitioner participated in the charged beatings, apart

from the unsworn testimony of Officers Finch and Planck given at an informal investigation conducted by respondent prior to making the charges against petitioner. At the hearing on such charges, the taped record of that testimony was received by the hearing officer despite the fact that the officers refused to testify at the hearing except as to the nature of the prior investigatory proceedings before the respondent and to assert that their testimony at that time was involuntary. Thus, petitioner's counsel had no opportunity to cross-examine them with respect to their statements which incriminated him. This lack of opportunity to cross-examine was particularly significant in this case where admittedly both Officers Finch and Planck had been drinking all day before giving their testimony, had previously made affidavit or statement that they knew nothing of the beatings, and at the start of his testimony Officer Finch twice reasserted his lack of knowledge. Further, it appears that he changed his testimony under threat of dismissal and after an officer relative advised him to change his testimony to save his job. Moreover, although the hearing officer found all three of them guilty and recommended that they be dismissed, respondent only suspended Officers Finch and Planck but dismissed petitioner. This gives further ground to believe that some promise may have been made to Officers Finch and Planck in return for their change of testimony, and it was reason for cross-examining them as to the truth of their changed testimony.

We do not question the ruling of the hearing officer in admitting the tapes into evidence. The inadequacy of the proceedings before him lies in the lack of substantial legal evidence in corroboration of such tapes, or the opportunity for petitioner to cross-examine Officers Finch and Planck at the hearing with respect to their taped testimony which was received against him.

Since there is no proper evidence in the record to support the findings that petitioner participated in the beatings, respondent's determination dismissing him should be reversed and annulled. The disciplinary proceeding against petitioner should be remitted to respondent for further hearing and determination consistent with this opinion, if respondent be so advised, at which continuation petitioner shall be permitted to cross-examine any witness who testifies against him.

MARSH, P. J., MOULE, MAHONEY and DEL VECCHIO, JJ., concur.

Determination unanimously annulled with costs and matter remitted to respondents for further proceedings in accordance with opinion by WITMER, J.