OPINION OF THE COURT
Joseph J. Sedita, J.
At the very heart of the judicial function is the choice between, or reconciliation of, competing rights. At times the process becomes a cool and detached assessment of the weight *1087 of respective choices, and at others the judicial decision maker must mediate a wrenching joust between equally noble and compelling causes. It is within this latter crucible that the court finds itself.
This matter comes before us as a motion to quash a subpoena duces tecum. The subpoena seeks to obtain mental health records of witnesses called to testify against a mental health facility employee who is charged with patient abuse. These records include both administrative "non-medical” types of information and medical records. The disciplinary hearing has been adjourned pending determination of the issues raised herein. An adverse decision at the disciplinary hearing could result in this employee’s discharge. Said discharge and the resulting stigma therefrom would undoubtedly narrow the future employment opportunities for this individual.
In opposing the release of these records, the State has asserted the right to maintain the confidentiality of these records pursuant to the statutory mandate of section 33.13 of the Mental Hygiene Law, and as privileged information received as an integral part of the sensitive relationship between medical practitioner and patient. (CPLR 4504.)
This court is aware of the unique susceptibility of mental health patients to attacks on their credibility and is especially sensitive to the extremely personal nature of their hospital records. In many respects these records represent a medical expedition into the mental processes of the patient. These records are in reality an imperfect mirror by which one can gaze into the reflected mind of the patient. Our legal tradition has been highly sensitive to violations of a certain zone of personal privacy as an essential starting point for individual liberties. (See Tribe, American Constitutional Law, § 15-3, p 893.) And so our Constitution, with certain exceptions, proscribes warrantless searches and the issuance of "general” warrants. The home is perhaps the historical starting point for the development of a constitutionally protected zone of personal privacy and liberty insulated from unreasonable searches by the government. In a recent decision the United States Supreme Court extended and reviewed its interpretation of this constitutionally protected zone of personal privacy, holding that a State may not attempt to regulate the sex lives of its married citizens. (Griswold v Connecticut, 381 US 479.)
In Griswold (supra, pp 484-485) Justice Douglas speaking *1088 for the majority reflected on the constitutional basis for the right to a protected zone of personal privacy when he stated:
"Various guarantees create zones of privacy. The right of association contained in the penumbra of the First Amendment is one, as we have seen. The Third Amendment in its prohibition against the quartering of soldiers 'in any house’ in time of peace without the consent of the owner is another facet of that privacy. The Fourth Amendment explicitly affirms the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.’ The Fifth Amendment in its Self-Incrimination Clause enables the citizen to create a zone of privacy which government may not force him to surrender to his detriment. The Ninth Amendment provides: 'The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.’
"The Fourth and Fifth Amendments were described in Boyd v. United States, 116 U.S. 616, 630, as protection against all governmental invasions 'of the sanctity of a man’s home and the privacies of life.’ We recently referred in Mapp v. Ohio, 367 U.S. 643, 656, to the Fourth Amendment as creating a 'right to privacy, no less important than any other right carefully and particularly reserved to the people.’ See Beaney, The Constitutional Right to Privacy, 1962 Sup. Ct. Rev. 212; Griswold, The Right to be Let Alone, 55 Nw. U.L. Rev. 216 (1960).”
In accord with Justice Douglas but perhaps more in point for our purposes is Professor Lawrence Tribe’s discussion of the constitutional underpinings of the right to protection of one’s reputation and records. He states at one particularly relevant part of his discussion: "Of course, where exposure of potentially derogatory information about an individual serves a significant governmental purpose, such exposure is not automatically unconstitutional. The key point to note is that a valid and sufficient governmental purpose may not be presumed lightly, since the individual’s right to the protection of his or her good name 'reflects no more than our basic concept of the essential dignity and worth of every human being — a concept at the root of any decent system of ordered liberty. The protection of private personality, like the protection of life itself, is left primarily to the individual states under the Ninth and Tenth Amendments. But this does not mean that the right is entitled to any less recognition by this Court as a *1089 basic of our constitutional system.’ (Justice Stewart concurring opinion in Rosenblatt vs. Baer, 383 U.S. 75.)” (Tribe, American Constitutional Law, p 969.)
If a citizen’s home and sex life are considered to be deserving of special protection, one must ask how much greater protection should be afforded the very private reflections of the human mind ensconced within the records sought herein. Should they not also be protected against warrantless intrusions or "general” warrants? The constitutional limitations placed against warrantless or general searches and intrusions on a citizen’s privacy, of course, operates with respect to "governmental” action. In cases such as the one before us, the information is sought not by government but by a union representing an individual employee. However, the release of this information is, in fact, an act of government which would result in a breach of the affected individual’s zone of personal privacy as surely as if the government was the seeker of this information. The government is, in fact, in the position of a trustee of this highly sensitive data. The United States Supreme Court has stated that: "We are not unaware of the threat to privacy implicit in the accumulation of vast amounts of personal information in * * * government files * * * The right to collect and use such data for public purposes is typically accompanied by a concomitant statutory or regulatory duty to avoid unwarranted disclosures * * * in some circumstances that duty arguably has its roots in the Constitution” (Whalen v Roe, 429 US 589, 605).
The point of the above discussion is not to suggest that the right to the protection of a certain zone of privacy is absolute or that the right to the confidentiality of mental health records is absolute. Constitutionally sound search warrants are issued daily in our country. The point is simply that our Constitution and legal tradition have required special safeguards as protection against unreasonable intrusions into this specially protected starting point of individual privacy and liberty. It is the considered opinion of this court that much of the information sought herein is of such a highly personal nature that it should be embraced within that special area of protected privacy, which should not be breached absent compelling circumstances and proper safeguards. We will return to this point later.
Having noted the rather weighty considerations on the side of the State in seeking to protect these records, let us now *1090 take note of the strong considerations which inure to the disclosure of these documents. As noted earlier, the disciplinary hearing that is the framework for seeking these records can result in extremely serious consequences for the employee involved. The heart of the case against this employee is embodied in the testimony of the two patient-witnesses against him. There may well be information in these files which would affect the arbitrator’s judgment as to the patients’ credibility and capacity as witnesses. It is indeed difficult to see how a truly fair determination can be reached by the trier of fact herein without any such relevant information before him. (See People v Rensing, 14 NY2d 210; Matter of Bremiller v Miller, 79 Misc 2d 244.)
The difficulties arising from the confrontation of the respective position herein would be resolved if the court determined that the witnesses have either expressly or implicitly waived their right to the confidentiality of this data. There is no question that there has been no express waiver by either witness. An implicit waiver of confidentiality of these types of records has been found where a party’s mental condition has been affirmatively put in issue (Koump v Smith, 25 NY2d 287) or where the complaining witness-patient has initiated criminal charges. (Matter of Camacho v Iafrate, 66 AD2d 799.) In our case the witnesses are not parties and seek no civil recovery herein. The employee, who is the subject of this hearing, faces no criminal charge. Under these circumstances, this court is of the opinion that these witnesses must not be required to relinquish the total privacy of their records due to their participation in this hearing.
A distinction might possibly be made between "voluntary” witnesses and subpoenaed witnesses with the former considered to have implicitly "waived” their right to confidentiality. However, the court is of the opinion that this would amount to a distinction in form rather than substance. If this distinction became the rule, all witnesses for the State would simply be routinely subpoenaed in order to protect these records. The full disclosure of these records would be tantamount to the issuance of a "general” warrant to search this highly personal information and as such should not be permitted.
In attempting to resolve the controversy before us, we note that the information sought can be divided into two very distinct categories. The first category is nonmedical administrative type records. The second category would be actual medical records of the patient. None of the weighty arguments *1091 against disclosure inure to the first category of records (administrative). Assuming some relevance to the dispute, they should be disclosed to the opposition. (Matter of Civil Serv. Employees Assn. v Director of Queens Children’s Psychiatric Center, Supreme Ct, Queens County, Nov. 1979 [Giaccio, J.], affd 76 AD2d 886.) (Matter of Camacho v Iafrate, supra.) The employee’s representative would have an opportunity to examine any administrative records revealing prior confrontations with patients or prior instances where the patient attempted to accuse an employee of abuse. The patient-witness could be cross-examined on these matters and other relevant material disclosed by the "administrative” type records. The second category (medical records) is where considerations of privacy and confidentiality become truly paramount. It is the considered opinion of this court that the confidentiality of these records can be substantially protected and at the same time brought to the attention of the arbitrator by permitting an in camera review of these medical records by the arbitrator. If the records are either too voluminous or highly technical for reasonable review by the arbitrator alone, he should be permitted an in camera examination of the attending physician. A sealed record should be kept of this testimony and any additional cost divided between the parties. This procedure will result in only a minor intrusion into the privacy of these records while at the same time offering substantial protection to the accused employee. Any medical information pertaining to the credibility or capacity of the witnesses will be available for examination by the arbitrator who, of course, is the trier of fact. We noted earlier that the United States Supreme Court has stated that intrusions into protected areas of privacy should not be permitted absent sufficient safeguards. The court has stated that: "If there are privacy interests to be protected in judicial proceedings, the States must respond by means which avoid public documentation or other exposure of private information.” (Cox Broadcasting Corp. v Cohn, 420 US 469, 496.) This court is of the opinion that the procedure set forth above provides both substantial safeguards to protect confidentiality and at the same time insures a fair hearing for the employee accused in these proceedings.
Accordingly, the motion to quash the subpoena duces tecum is granted without prejudice to an application to the court for an order seeking disclosure in accord with the procedure set forth above.