OPINION OF THE COURT
Nicholas A. Clemente, J.
Plaintiff moves for an order suppressing all interpretations of nonverbal responses by the stenotype reporter in the transcript of the deposition of Tyrone Ellis taken on July 13, 1983, or, alternatively, suppressing such deposition in its entirety.
The instant controversy arises from the examination before trial of the infant plaintiff Tyrone Ellis, an individual allegedly brain damaged due to the malpractice of defendants. At the examination, Tyrone Ellis did not respond verbally. In attempting to communicate the defense counsels sought to elicit motor responses which they now contend rise to the level of competent deposition testimony.
The stenographer indicated by parenthetic notations in the transcript that which he visually perceived.
Thus, the transcript starts:
Q Tyrone, Hi * * * Is it all right if I ask you some questions?
A (No Response)
Q Tyrone, do you want to tell me what your name is?
A (No Response)
*943 Q Do you want to tell me anything about yourself?
A (No Response)
Q Do you want to talk to me?
A (No Response)
Then later:
Q Would you like to raise your hand?
A (No Response)
Q Tyrone, would you like a mint? Would you like one of these (handing)? (Witness takes the package of mints).
Q Do you want it? You can have the whole thing. Does it taste all right? What do you think?
A (No Response)
Q Do you like it?
A (No Response)
Q Can I help you get the other one out?
A (Handing)
Q Here. Have another one (handing). Do you want to get the next one out? Go ahead. Do you want to try it? Tyrone, why don’t you pull the paper around?
(Witness tears the paper off the package of mints).
Still later:
Q How about if you raise your hand? If you raise your hand, I’ll open it. If you do anything, I’ll open it; okay?
A (No Response)
Q How about this:
I’ll give you a piece of paper (handing). Do you- want to draw on the paper? You can draw on the paper. Do you use your left hand or your right hand; your right hand?
Okay. Why don’t you draw something on the paper, a little picture. What can you draw for me? Can you draw a circle?
A (No Response)
Q Do you want to draw a circle?
A (No Response)
Q How about this:
If I draw a circle, like this ([Defense attorney] draws a circle), will you do that?
*944 (Witness scribbles on the paper.)
Q That’s very good. Here you go, as promised. Here’s another mint (handing).
The questioning continued in this vein for approximately 26 pages eliciting at least 80 “(No Responses)” and various additional parenthetic notations, such as “(witness continues to play with keys.)”
Plaintiff now moves to suppress on the ground that to permit the stenotype reporter’s interpretations to stand would mean that the reporter has testified and gone beyond his usual function at an examination before trial.
I conclude that the entire “examination before trial” should be suppressed. This transcript omits any indication that the infant plaintiff was sworn and apparently this was not attempted. In fact, the certification by the stenotype reporter states “that Tyrone Ellis, the witness whose examination is hereinbefore set forth was not sworn” (emphasis supplied).
CPLR 3113 (subd [b]) provides: “Oath of witness; recording of testimony; objections; continuous examination; written questions read by examining officer. The officer before whom the deposition is to be taken shall put the witness on oath and shall personally, or by someone acting under his direction, record the testimony.”
CPLR 3116 states:
“Signing deposition; physical preparation; copies * * *
“(b) Certification and filing by officer. The officer before whom the deposition was taken shall certify on the deposition that the witness was duly sworn by him and that the deposition is a true record of the testimony given by the witness.”
It is thus clear that under the plain provisions of CPLR 3113 and 3116 the examination before trial of Tyrone must be suppressed because he was unsworn when he testified. This is, of course, consistent with the general rule that in civil actions, unlike criminal trials, unsworn testimony is inadmissible (CPL 60.20; Richardson, Evidence [10th ed], § 388).
This rule is not without exceptions. Thus, the Court of Appeals has upheld the use in an administrative proceed *945 ing of the unsworn testimony of witnesses with the mental capacity of children (Matter of Brown v Ristich, 36 NY2d 183). Nevertheless, the court required such witnesses to possess some minimal testimonial capacity, which it defined at page 189 as follows: “A witness is said to be capable when he has the ability to observe, recall and narrate, i.e., events that he sees must be impressed in his mind; they must be retained in his memory; and he must be able to recount them with sufficient ability such that the presiding official is satisfied that the witness understands the nature of the questions put to him and can respond accordingly, and that he understands his moral responsibility to speak the truth (2 Wigmore, Evidence [3d ed.], § 492, et seq.).”
The instant transcript indicates that none of the lawyers made any attempt to establish Tyrone’s competence.[1] The conclusion is inescapable that everyone knew that it was impossible for the witness to be duly sworn. Thus the proceeding was not an examination before trial but rather a medical or psychological examination in its most primitive sense. In my view, lawyers should not invade the disciplines of medicine or psychology and should avoid the temptation of utilizing what they perceive to be Pavlovian principles,[2] all under the guise of a deposition.
Accordingly, the motion is granted and the transcript of Tyrone Ellis’ examination before trial is suppressed.

. They would not have been precluded from such an effort by the fact that Tyrone did not respond verbally since nonverbal responses have been deemed competent responses (Richardson, Evidence [10th ed], § 389).

. “Q You want the candy first? I’ll give you the candy first, and then you will raise your hands way up.
“(Witness so raises his hands)
“Q Good for you. Good boy (handing).”