Gailann TROMELLO et al., Plaintiffs,

v.

Mark Vincent DIBUONO,
M.D., Defendant.

No. CV–97–5754 ERK VVP.

United States District Court,
E.D. New York.

Dec. 13, 2000.

David B. Bowman, New York, NY, for plaintiff.

Andrew M. Laskin, Clausen Miller, P.C., New York, NY, for defendant.

## REPORT AND RECOMMENDATION

POHORELSKY, United States Magistrate Judge.

The defendant in this psychiatric malpractice action has moved for a hearing to determine whether the plaintiff is competent to testify at any trial of this matter. Judge Korman has referred the application to the assigned magistrate judge for a report and recommendation. For the reasons below, I recommend that the application be DENIED.

The claims in this action are based on allegations that the defendant, a psychiatrist, engaged in an extended sexual relationship with the plaintiff Gailann Tromello, both while she was his patient and thereafter, which exacerbated the plaintiff's mental illness. In the course of discovery, the defendant retained a forensic psychiatrist, Robert Lloyd Goldstein, to

provide expert consultation and testimony regarding the plaintiff's mental condition. Dr. Goldstein has reviewed the plaintiff's extensive medical and psychiatric records, observed the plaintiff during five hours of deposition testimony, read transcripts of her other deposition testimony, and conducted an examination of the plaintiff. On the basis of those observations and reviews, Dr. Goldstein issued a report reflecting various opinions about the plaintiff's mental condition, including the opinion that she is so delusional that she is incompetent to be a witness in this case because she cannot appreciate the distinction between truth and fantasy. *See* Letter of Dr. Goldstein to Andrew M. Laskin, Esq. dated May 8, 2000 (the "Goldstein Report") (annexed to counsel's letter to the court dated May 10, 2000), at 20. The opinion is based in part on Dr. Goldstein's finding that the plaintiff suffers from erotomania, a recognized psychiatric disorder whose victims suffer from erotic delusions, including the delusion that they have had or are having sexual relations with the objects of their obsessions. It is this delusion which, in the opinion of Dr. Goldstein, underlies the plaintiff's allegations that the defendant had a sexual relationship with her. As further evidence that the plaintiff suffers from such delusions, Dr. Goldstein found it to be of "the utmost significance" that the plaintiff professed to him that she was having sexual contacts with her (then) present psychiatrist, Dr. Coppa.

In opposition, the plaintiff has offered rather unusual evidence that tends to support her claims that her allegations of sexual contacts by her psychiatrists are not delusional. Specifically, the plaintiff has submitted an audiotape containing a surreptitious recording of a conversation she had with Dr. Coppa, three days after the instant application was made. The audiotape, portions of which the court has reviewed, contains statements by Dr. Coppa tending to confirm that he had indeed engaged in sexual contacts with the plaintiff.

Upon review of the audiotape, the plaintiff's present psychiatric expert, Stephen Bates Billick, prepared a supplemental report (his earlier report regarding the plaintiff's condition apparently did not address the competency issues raised by the defendant) contradicting Dr. Goldstein's diagnosis that the plaintiff suffers from delusions regarding her sexual contacts with the two psychiatrists she has alleged. In response, Dr. Goldstein also prepared a supplemental report after reviewing the audiotape which seeks to distinguish the plaintiff's allegations concerning the defendant from those concerning Dr. Coppa, and offers a number of arguments and opinions to support his conclusion that her allegations concerning the defendant are delusional even if her allegations about Dr. Coppa are not delusional. Although Dr. Goldstein's supplemental report does not concede that the plaintiff's allegations about Dr. Coppa are based in reality, and not in delusion, it offers no basis in the audiotape to conclude otherwise.

As the claims at issue here are governed by state law, questions concerning the competency of witnesses are also governed by state law. *See* Fed.R.Evid. 601; *Rosenfeld v. Basquiat,* 78 F.3d 84, 88 (2d Cir.1996). Under New York law, where mental capacity is in issue, "[t]he test is whether the prospective witness 'has sufficient intelligence to understand the nature of any oath and to give a reasonably accurate account of what he has seen and heard vis-a-vis the subject about which he is interrogated.'" *People v. Parks,* 41 N.Y.2d 36, 45, 390 N.Y.S.2d 848, 359 N.E.2d 358 (1976) (quoting *People v. Rensing,* 14 N.Y.2d 210, 213, 250 N.Y.S.2d 401, 199 N.E.2d 489 (1964)). The determination whether a witness has the mental capacity to testify is committed to the court's discretion, and is "exclusively the responsibility of the trial court, subject to limited appellate review." *Parks,* 41 N.Y.2d at 46, 390 N.Y.S.2d 848, 359 N.E.2d

358. "The traditional rule still followed in this State is that all adults are presumed to be competent to testify," *id.* at 45, 390 N.Y.S.2d 848, 359 N.E.2d 358, and "[t]he mere fact that one is insane or mentally ill does not per se disqualify him from testifying." *Rensing,* 14 N.Y.2d at 213, 250 N.Y.S.2d 401, 199 N.E.2d 489.

■ In making the competency determination, the trial court typically conducts an inquiry of the witness at the time of trial, and may also consider testimony by physicians and others who are in a position to shed light on the capacity and intelligence of the witness. *See, e.g., Parks,* 41 N.Y.2d at 39–40, 390 N.Y.S.2d 848, 359 N.E.2d 358; *In re Brown,* 36 N.Y.2d at 186–87, 366 N.Y.S.2d 116, 325 N.E.2d 533. The focus of the court's limited inquiry is on the witness's capacity, not on the credibility of the witness's testimony which is properly reserved to the jury. *See, e.g., Parks,* 41 N.Y.2d at 47, 390 N.Y.S.2d 848, 359 N.E.2d 358.

■ The competency test above has been liberally construed in favor of the admission of testimony by persons with limited mental capacity. Thus, for example, courts in New York have determined in favor of admitting testimony by a nonverbal, autistic and mentally retarded 11-year-old child, *see In re Luz P.,* 189 A.D.2d 274, 282, 595 N.Y.S.2d 541 (2d Dep't 1993), by a person judicially declared incompetent and unable to manage his affairs, *see Barker v. Washburn,* 200 N.Y. 280, 283, 93 N.E. 958 (1911), and mentally retarded adults with the mental age of four- to six-year-olds, *see In re Brown v. Ristich,* 36 N.Y.2d 183, 186–87, 366 N.Y.S.2d 116, 325 N.E.2d 533 (1975). Even a person who has indisputably been determined to be insane, and to be suffering from "visual and auditory hallucinations with marked memory defect," is not necessarily incompetent to testify. *Rensing,* 14 N.Y.2d at 213–14, 250 N.Y.S.2d 401, 199 N.E.2d 489. Indeed, the defendant has cited no case in which testimony by a person with limited mental capacity was

found to have been properly excluded. Rather, the preferred method for dealing with such situations is to permit the witness to testify, but to admit evidence concerning the witness' mental capacity to assist the jury in evaluating the weight, if any, to be given to the testimony. *See, e.g., Parks,* 41 N.Y.2d at 47–48, 390 N.Y.S.2d 848, 359 N.E.2d 358; *Rensing,* 14 N.Y.2d at 213–14, 250 N.Y.S.2d 401, 199 N.E.2d 489.

As disclosed at a conference with counsel regarding this matter, the hearing contemplated by the defendant's counsel would be conducted well before trial and would span several days. He intends to call the plaintiff as an adverse witness, as well as other fact witnesses, essentially to give the testimony that would be given at trial about the incidents in question. Counsel further wishes to introduce transcripts of the plaintiff's deposition testimony, and to ask the court to evaluate her testimony at the hearing in light of that deposition testimony, as well as the other factual evidence that will be offered. The defendant's expert, Dr. Goldstein, would be called to explain his diagnosis of the plaintiff and the delusional aspects of the mental illness she suffers, and to offer his conclusion that her testimony about her sexual contacts with the defendant is therefore incredible. The plaintiff will of course counter that evidence with its own expert's testimony concerning the plaintiff's capacity to provide credible testimony. In essence, the defendant seeks a trial before the trial, at which the court will be asked as a finder of fact to determine, in the light of competing expert testimony, and in the light of much of the evidence in the case, whether the plaintiff's testimony is so incredible that it must be the product of delusions.

■ Such a hearing is neither necessary or appropriate under New York law. There is no evidence that the plaintiff, although suffering from a mental illness, is unable to understand the obligation to tell

the truth while under oath. Nor is there any evidence to suggest that the plaintiff lacks the intelligence to understand the questions that are put to her and to give responsive answers. *See In re Brown*, 36 N.Y.2d at 188–89, 366 N.Y.S.2d 116, 325 N.E.2d 533. Indeed, she has given many hours of deposition testimony during which she has apparently provided answers to the defendant's questions. The court's review of the tape recording provided by the plaintiff discloses no lack of lucidity. In these circumstances, the hearing contemplated by the defendant would center solely on the credibility of the plaintiff, and would require the court to make a determination of competence based on whether the court deemed her testimony so incredible as to be the product of delusion. Such credibility determinations, however, are within the "traditional and exclusive province of the jury," *Parks*, 41 N.Y.2d at 47, 390 N.Y.S.2d 848, 359 N.E.2d 358, particularly in a case such as this, where a finding that the plaintiff is not competent to testify is effectively a dismissal of her entire case. *See id.* at 50, 390 N.Y.S.2d 848, 359 N.E.2d 358 ("In reaching this conclusion [finding no error in the admission of testimony by a mentally retarded rape victim], we are sensitive to the fact that, in particular cases, an overly restrictive approach to the evidentiary rules respecting testimonial capacity could work to deny the mentally infirm the right to complain of their treatment at the hands of those nominally responsible for their care.")

Declining to hold the hearing requested will not prejudice the defendant. The testimony the defendant would offer at the competency hearing concerning the plaintiff's mental illness, including any alleged delusional tendencies, is likely to be admissible at trial both on the issue of the plaintiff's credibility and on the issue of damages. Thus, the jury, as trier of fact, will have all of the information that the court would have at a competency hearing,

and will have the basis to make the credibility determinations that are properly within its province.

Accordingly, it is my recommendation that the defendant's application for a competency hearing of the nature requested by the defendant be denied. If, at the time of trial, questions are raised as to whether the plaintiff "has sufficient intelligence to understand the nature of an oath and to give a reasonably accurate account of what [s]he has seen and heard vis-a-vis the subject about which [s]he is interrogated," *People v. Parks*, 41 N.Y.2d at 45, 390 N.Y.S.2d 848, 359 N.E.2d 358, the trial court should conduct an inquiry of the plaintiff, out of the presence of the jury, to insure that she understands that taking an oath carries the obligation to tell the truth, and to satisfy the court that the plaintiff is capable of understanding questions and giving responsive answers about the matters in issue. In its discretion, the trial court may consider the experts' reports and receive testimony from the experts if the court continues to have questions concerning the plaintiff's capacity. The court should not, however, engage in a detailed examination of the plaintiff's testimony with a view toward determining whether it is credible.[1]

\* \* \* \* \* \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 10 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.),

---

1. Of course, if the trial court determines, during or after the plaintiff's trial testimony, that it is wholly irrational so as to be the product of delusions, nothing would prevent the court from declaring the witness incompetent and striking the testimony at that point.

87

*cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health and Human Serv.,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam).