**UNITED STATES of America,
Plaintiff,**

v.

**William H. ROBINSON, Defendant.**

**Crim. A. No. 1926.**

United States District Court,
D. Delaware.

July 26, 1971.

724

F. L. Peter Stone, U. S. Atty., and Norman Levine, Asst. U. S. Atty., Wilmington, Del., for plaintiff.

David T. Dana, III, of Richards, Layton & Finger, Wilmington, Del., for defendant.

## MEMORANDUM OPINION AND ORDER

LATCHUM, District Judge.

The defendant, William H. Robinson ("Robinson"), pursuant to Rule 33, F. R.Crim.P., has filed a motion for a new trial on the ground of newly discovered evidence.

Robinson[1] was convicted in this Court on May 8, 1969 after a three-week jury trial on all counts of a four-count indictment which charged him with (1) assault, or aiding and abetting an assault, with a dangerous weapon upon FBI Agent Frank W. Grant ("Agent Grant") in violation of 18 U.S.C. § 111 and 18 U.S.C. § 2; (2) assault, or aiding and abetting an assault, upon FBI Agent James D. Snyder ("Agent Snyder") also in violation of 18 U.S.C. § 111 and 18 U.S.C. § 2; (3) conspiring to prevent these agents from performing their official duties, in violation of 18 U.S.C. § 372; and (4) assisting their prisoner, Robert L. Barber, to escape, in violation of 18 U.S.C. § 752. Following his conviction, Robinson moved for a post-trial judgment of acquittal or for a new trial. These motions were denied. United States v. Barber et al., 303 F.Supp. 807, 815–818 (D.Del.1969). On August 26, 1969, Robinson was sentenced to a maximum prison term of fifteen years.[2] On appeal, Robinson's conviction on all counts was affirmed. United States v. Barber et al., 442 F.2d 517 (C.A. 3,

1. Twelve other co-defendants were charged in the indictment. The charges were brought as a consequence of an attack by a group of men upon two Special Agents of the Federal Bureau of Investigation ("FBI") after they had arrested Robert L. Barber as an Army deserter. The attack occurred in Wilmington, Delaware on October 29, 1968. For prior proceedings in this Court, see United States v. Barber, 296 F.Supp. 795; 297 F.Supp. 917; 303 F.Supp. 807.

2. Robinson was sentenced to ten years on Count 1, three years on Count 2, five years each on Counts 3 and 4. The five year sentence on Count 2 is to run concurrently with the ten year sentence on Count 1 and the sentence of five years each on Counts 3 and 4 are to run concurrently. The ten year sentence on Count 1 and the five year sentence on Count 3 are to run consecutively for a total maximum prison term under said sentences of fifteen years.

1971). On May 7, 1971 Robinson filed the present motion for a new trial.[3]

Robinson contends that he has found newly discovered evidence relating to the "sanity" of Deborah Price ("Miss Price"), a government witness, which clearly establishes that her trial testimony and identification of Robinson was "totally unreliable" and should not have been used to link Robinson with participation in any of the offenses for which he was convicted. In support of this contention Robinson has submitted three affidavits—one from Dr. Agatha Beaudry ("Dr. Beaudry"), Director of the Mental Hygiene Clinic ("the Clinic"), a division of the Delaware Department of Health and Social Services, one from Henry A. Wise, Esquire ("Wise"), Robinson's trial counsel, and one from David T. Dana, III, Esquire ("Dana"), Robinson's present counsel.

The substance of Dr. Beaudry's affidavit is as follows: Miss Price was referred to the Clinic on November 4, 1968 by the Wilmington Public School system "because  *  *  *  her practice of carrying tales had been continuing for some time." According to the affidavit, "She was first seen in the Clinic on November 18, 1968" and has been a patient "on a fairly regular basis since then." The records of the Clinic show that at the time of Robinson's trial, in April and May 1969, and for some time both before and after, the Clinic had diagnosed Miss Price as "a very confused girl and not functioning well mentally" and that it was the "impression of all her therapists that she had (and still has) a pre-psychotic personality, that is, that she is a border-line schizophrenic case", "cannot properly judge reality" and that "her mind conjures up fantasies" which she believes to be true. Dr. Beaudry was also of the "opinion", based on her background and experience, the "opinions" of the therapists who worked with Miss Price and the records of the Clinic, that Miss Price, who had been asked to identify persons she had seen assaulting FBI agents from a series of photographs—

"  *  *  *  would be absolutely unable to identify any person she may have seen. She would be totally confused by the pressure of the situation and lose her ability to handle reality. Her identification would be totally unreliable. Deborah Price's desire to be loved, to get attention, and to do what is expected of her, would so influence her ability to identify persons, and to report that identification, that the identification would be totally unreliable."

The Wise affidavit states in substance that he, as Robinson's trial attorney, did not know before the trial that Miss Price would be a witness, that he was never advised by the government attorneys that Miss Price was under treatment for a mental disorder, and that, after Miss Price had testified and near the end of the trial, he "was advised that 'rumor had it' that Deborah Price was or had been a patient at the Delaware State Hospital [a mental institution]" and that upon contacting the hospital was informed that Deborah Price was neither a patient nor had ever been a patient there.

The Dana affidavit repeats, as secondhand information, the essence of the statements contained in the Beaudry and Wise affidavits. In addition, Dana avers that on May 3, 1971 he learned that Miss Price during the time of trial had been under the care of the Clinic. Dana further states that Dr. Beaudry confirmed this by telephone on May 4, 1971 and that she also "told me that prior to the time Deborah Price was called to testify she had advised the United States Attorney, Alexander Greenfeld, the Government prosecutor at the trial in April and May, 1969, that Miss Price was at the time a patient" of

---

3. The motion for a new trial based on newly discovered evidence, having been filed within two years after entry of the judgment of conviction, is timely. Rule 33, F.R.Crim.P.

the Clinic. However, on May 10, 1971, Dana states that Dr. Beaudry "told me that it was not Deborah Price, but another witness about whom the Clinic called Mr. Greenfeld."

The Government has filed a counteraffidavit by Norman Levine ("Levine"), an assistant prosecutor who worked on the case, which states that although he was assigned to the case from the date of the assault on October 29, 1968, it had never come to the government's attention that Miss Price was ever a patient of the Clinic until Robinson's motion was filed. The Levine affidavit further avers that a review of the government's file in the case, including the FBI and Wilmington Bureau of Police reports, revealed that the file and reports contained no information indicating that Miss Price ever was or ever had been a patient of the Clinic.

At the outset it should be understood that nothing in the present record indicates that the prosecution suppressed any evidence or concealed from the defense any information concerning Miss Price's mental condition. If this had occurred, in good or in bad faith, it might have infringed Robinson's constitutional rights to due process and a fair trial, as exemplified in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Napuie v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) and Alcorta v. Texas, 355 U.S. 28, 78 S. Ct. 103, 2 L.Ed.2d 9 (1957).[4] The Levine and Dana affidavits, however, quite clearly show that the government did not know that Deborah Price was a patient of the Clinic until the present motion was filed. Therefore, the sole question presented by this motion for a new trial is whether the information relating to Miss Price's mental condition is of such a nature as to require a retrial.

■ The law with respect to granting a new trial based on newly discovered evidence is well settled. Granting or denying a motion for a new trial on the ground of newly discovered evidence rests in the sound discretion of the Court. United States v. Bujese, 371 F. 2d 120, 124 (C.A.3, 1967); United States v. Rutkin, 208 F.2d 647, 654 (C. A.3, 1953).

■ Five essential requisites for ordering such relief must be met: (1) The evidence must have been discovered after the trial; (2) the failure to learn of the evidence must not have been caused by the defendant's lack of diligence; (3) the new evidence must not be merely cumulative or impeaching; (4) it must be material to the principal issues involved; and (5) it must be of such a nature that it would probably produce an acquittal in the event of a retrial. United States v. Rutkin, 208 F. 2d 647, 649 (C.A.3, 1953); United States v. Bertone, 249 F.2d 156, 160 (C. A.3, 1957); United States v. Howell, 240 F.2d 149, 159 (C.A.3, 1956). Furthermore, when considering such a new trial motion, the United States Supreme Court's admonition must be kept in mind: "While a defendant should be afforded the full benefit of this type of rectifying motion, courts should be on the alert to see that the privilege of its use is not abused." United States v. Johnson, 327 U.S. 106, 113, 66 S.Ct. 464, 467, 90 L.Ed. 562 (1946).[5]

After carefully considering the profferred newly discovered evidence, the Court concludes that it fails to meet at least three of the essential requisites for granting a new trial.

In the first place, it is not suggested that Miss Price was an "idiot, a lunatic or so generally insane" either at the time of the assault or at the time of trial as to render her testimony completely incompetent. None of the moving papers take or support this position. Rather Robinson contends that her men-

4. However, note United States v. Miller, 411 F.2d 825, 832 (C.A.2, 1969).

5. This admonition seems particularly appropriate in this case since it is Rob-

inson's second motion for a new trial, although based on different grounds. See 303 F.Supp. 807, 815–818 (D.Del.1969).

tal condition was such that she was incapable of distinguishing "fact from fantasy" and that this made her identifications of persons involved in the assault "totally unreliable." Consequently, Robinson argues that this new evidence should be available to impeach Miss Price's character and creditability at a new trial. Finally, Robinson claims that Miss Price was the "ONLY witness who positively identified William Robinson as an actor in the affray" and her testimony was highly material since it was relied upon by the Court of Appeals in order to sustain Robinson's conviction.[6]

■ Assuming that the new evidence of Miss Price's mental condition to be true, it is not new evidence bearing on Robinson's guilt or innocence, but merely evidence bearing on Miss Price's creditability. Such evidence alone is ordinarily not a sufficient basis for granting a new trial. United States v. Curry, 358 F.2d 904, 919 (C.A.2, 1965), cert. den. 385 U.S. 873, 87 S.Ct. 147, 17 L.Ed.2d 100 (1966), reh. den. 387 U.S. 949, 87 S.Ct. 2079, 18 L.Ed.2d 1341 (1967); Gichanov v. United States, 281 F. 125, 127 (C.A.6, 1922); United States v. Holtz, 288 F. 81, 82 (E.D.N.Y.1923), aff'd per curiam 293 F. 1019 (C.A.2, 1923).

Furthermore, the evidence adds little to the sustained attack made upon Miss Price's creditability at trial. To that extent it is merely cumulative. Deborah Price, a fifteen-year old, tenth-grade high school girl, was extensively cross-examined at trial. She was on the stand during a two day period for approximately eight hours. She fully understood the significance of her oath (Tr. 804).[7] It is apparent from the trial transcript and it was apparent to me as the trial judge at the trial that many minor details in her testimony were corroborated by other witnesses and that her testimony was not fabricated from the "whole cloth".[8] But more significantly, it should be noted that this Court, in denying Robinson's first motion for a new trial, did not rely upon Miss Price's testimony. Even without it, there was ample evidence to sustain Robinson's convictions. See 303 F.Supp. 807, 815–818. Newly discovered evidence of an impeaching character which is merely cumulative is not an adequate basis for granting a new trial. Mesarosh v. United States, 352 U.S. 1, 9, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956); United States v. Rutkin, 208 F.2d 647, 654 (C.A.3, 1953).

Moreover, in the Court's opinion, any evidence of Miss Price's mental condition presented at a retrial would not be likely to produce an acquittal of Robinson on any of the four charges. The chief weakness of Robinson's present motion is his reliance upon the assertion that Miss Price was the "key" witness or "only" witness. This is just not the case. Agent Snyder[9] positively identified Robinson as turning from a wall, coming toward him and grabbing him. Twilly McCready identified Robinson as kicking Agent Grant on the ground.[10] Carol Jean Wright[11] and Ernestine Barber[12] both put Robinson at the scene before the fight in the threatening gang (and not in the crowd as simply onlookers). See 303 F.Supp. 809, 816–817.

■ The very fact that the testimony of witnesses other than Miss Price was sufficient to convict Robinson distinguishes the present situation from the cases relied upon by Robinson, i. e. People v. Cieplinski, 103 N.Y.S.2d 391 (Ct. Gen.Sess.1951); People v. Rensing, 14 N.Y.S.2d 210, 250 N.Y.S.2d 401, 199 N.E.

6. The Court of Appeals simply said: "Debbie Price placed Robinson in the fight although she identified him by name as 'Steven White'."

7. "Tr." refers to the trial transcript of this case.

8. All of the witnesses were sequestered during the trial.

9. Tr. 324–325, 326, 347.

10. Tr. 1050–1053.

11. Tr. 1196–1199, 1205.

12. Tr. 445, 447.

2d 489 (1964)[13] and Taborsky v. State, 142 Conn. 619, 116 A.2d 433 (1955). A new trial should be denied where the newly discovered evidence is only impeaching and would be unlikely to produce an acquittal at another trial. United States v. Willis, 217 F.2d 941 (C.A.3, 1955).

Finally, the Court is not satisfied Robinson exercised due diligence in discovering this allegedly new evidence. While it is true that the defense did not know that Miss Price was to be a witness until she was called to the stand, she did testify over a two-day period, during the fifth and sixth day of trial. The trial lasted for four more trial days, extending over a period of a week. The trial ended April 30, 1969, and Robinson's first motion for a new trial was not decided until August 20, 1969. At no time during this period was the information concerning Deborah Price brought to anyone's attention.

Robinson's trial counsel admits that during the trial he heard "rumors" concerning Miss Price and had inquired of her at the Delaware State Hospital. Nothing was said either to the Court or to the prosecution regarding these "rumors." A more complete investigation of the "rumors" at an earlier time might have revealed the information that Robinson's present counsel learned on May 3, 1971. No representation has been made by Robinson's present counsel that he had any difficulty in finding the "new evidence" at the time that he did and no explanation has been given as to what prompted the further telephone inquiry which led to the discovery of the information presented here. Evidence which would have been discovered by the diligence of the defendant or his counsel cannot be classified as "newly discovered evidence." United States v. Bujese, 371 F.2d 120, 125 (C.A.3, 1967).

On the present record, the Court finds (1) that the "newly discovered evidence" is merely impeaching and cumulative, (2) that due diligence in its discovery has not been shown and (3) that the evidence in any event would not likely result in an acquittal of Robinson at a retrial. Therefore, the motion for a new trial is not well-taken.

---

13. The defendant in *Rensing* repudiated his confession when he took the stand on his own behalf. Compare *Rensing* with People v. Salemi, 309 N.Y. 208, 128 N.E.2d 377 (1955), cert. den. 350 U.S. 950, 76 S.Ct. 325, 100 L.Ed. 827 (1956).