UNITED STATES of America,
Plaintiff-Appellee,

v.

Gregory Lee HARRIS and Larry Hollins,
Defendants-Appellants.

Nos. 75–2045 and 75–2046.

United States Court of Appeals,
Ninth Circuit.

April 26, 1976.

Michael J. McCabe (argued), Federal Defenders of San Diego, San Diego, Cal., for defendants-appellants.

Stephen V. Petix, Asst. U. S. Atty. (argued), Terry J. Knoepp, U. S. Atty., James W. Meyers, Asst. U. S. Atty., on the brief, San Diego, Cal., for plaintiff-appellee.

## OPINION

Before HUFSTEDLER and CHOY, Circuit Judges, and CHRISTENSEN,* District Judge.

CHRISTENSEN, District Judge:

We are called upon to decide in this case whether the trial court abused its discretion by denying appellants' motions for a new trial on the ground of newly discovered evidence relating to the mental competency of a key witness against them, or in refusing the requested appointment of a psychiatrist to assist in a further attempt to establish that the witness was significantly incompetent at the time he testified.

Appellants, together with one Larry Lee Ford, were jointly charged in a two-count indictment with conspiring to rob and robbing a bank, aggravated by placing lives in jeopardy by the use of dangerous weapons described as shotguns, in violation of 18 U.S.C. § 371, and § 2113(a) and (d). After the selection but before the empanelment of the jury, the case of the codefendant Ford was severed from that of the appellants and he became the principal prosecution witness, testifying that all three of

them had participated in the bank robbery and had carried sawed-off shotguns. The trial began March 7, 1974, and was concluded a week later. Appellants were convicted and sentenced to prison terms which they are now serving, and their convictions were affirmed on appeal. *United States v. Hollins and Harris* (9th Cir. unpublished memorandum Nos. 74–2393 and 74–2397, 1974), *cert. denied,* 421 U.S. 931, 95 S.Ct. 1659, 44 L.Ed.2d 89 (1975).

Following trial of the others, Ford entered a plea of guilty and underwent a Youth Corrections Act study pursuant to 18 U.S.C. § 5010(c). Upon his return to the district court for the final imposition of sentence on October 1, 1974, he made statements which called his sanity into question and led the court to appoint Dr. John D. Robuck for the purpose of an examination and report. In a letter dated October 14, 1974, Dr. Robuck diagnosed Ford's disorder as schizophrenia with some underlying paranoid features, opined that the manifestation of two weeks earlier was not of recent origin but had been developing for some time and commented that the "disorder had no apparent relationship to his participation in the crime to which he has confessed. . . ."[1]

---

* Honorable A. Sherman Christensen, Senior United States District Judge for the District of Utah, sitting by designation.

1. Among other things, Dr. Robuck wrote:

"I found Mr. Ford to be an alert, moderately-intelligent young Negro man of about his stated age who was in good contact with the interview situation. He answered my questions fairly directly, for the most part, although there was some tendency to become diffuse [sic] in some of his comments and explanations of the unusual events he describes as occurring in the past couple of months. Affect was usually fairly appropriate but sometimes flat and unexpected, I felt. No overt evidences of hallucinatory experience occurred while I was with Mr. Ford and he stated that he heard no voices during our interview. . . .

". . . He has a history of being a rather conforming individual, having limited intelligence, striving beyond his abilities in an effort to live up to his family's expectations of him, living in the military-dependent lifestyle of the armed forces in Germany for a significant period, doing only fairly well in school, having an injury which terminated

his athletic career, being on his own for the first time without parental guidance and feeling inadequate and uncomfortable with his inability to get a job and be independent of his family's financial support.

"It was out of these that he participated in the robbery and he recognizes some pangs of conscience as it occurred which were not sufficient to prevent his performance. He may have been a little relieved at being caught, it would seem, and settled into the routines at Lompoc soon and easily. With the increasing pressures on him as to what was to become of him and the extension of his stay there for an additional 30 days, he began to experience more stress than he had at any time previously.

"The testing format at Lompoc apparently found some deviations in the MMPI scales which were distorted toward Schizophrenia, Paranoid, and Psychopathic qualities. Caution that the validity scale was also distorted was voiced but the subsequent developments lend more credibility to the readings of the other measurements. While there, Mr. Ford began to experience some things which he felt were unusual but which did not seem to unduly alarm him. He felt he was being

On April 17, 1975, appellant Harris, joined by Hollins, filed a motion for a new trial on the ground of newly discovered evidence [2] based on Dr. Robuck's report, and moved for leave to employ a qualified psychiatrist at government expense for the purpose of securing another opinion as to the mental competence of Mr. Ford at the time of the trial. These motions were denied by the trial judge at a non-evidentiary hearing, followed by a formal written ruling to the same effect.[3]

█ The showing actually made by appellants was insufficient in and of itself to establish abuse of discretion by the trial court in denying the motion for a new trial. Such a motion is addressed to the sound discretion of the trial court. *Lindsey v. United States,* 368 F.2d 633, 636 (9th Cir. 1966), *cert. denied,* 386 U.S. 1025, 87 S.Ct. 1383, 18 L.Ed.2d 465 (1967). The standard for review is narrow. *United States v.*

*Granger,* 504 F.2d 585 (9th Cir. 1974). See also *United States v. Slutsky,* 514 F.2d 1222, 1225 (2d Cir. 1975); *United States v. Sposato,* 446 F.2d 779, 781 (2d Cir. 1971). This court in *United States v. Diaz-Rodriguez,* 478 F.2d 1005 (9th Cir.), *petition for cert. dismissed,* 412 U.S. 964, 93 S.Ct. 3024, 37 L.Ed.2d 1013 (1973), described the generally accepted essentials as follows:

"(1) The evidence must have been discovered since the trial; (2) it must be material to the factual issues at the trial, and not merely cumulative nor impeaching the character or credit of a witness; (3) it must be of such a nature that it would probably produce a different verdict in the event of a retrial. *United States v. Costello,* 255 F.2d 876 (2 Cir.), cert. denied 357 U.S. 937, 78 S.Ct. 1385, 2 L.Ed.2d 1551 (1958)." *United States v. Durgin,* 444 F.2d 308, 308–309 (9th Cir. 1971), cert. denied 404 U.S. 945, 92 S.Ct.

---

poisoned for some unknown purpose but was not troubled by this since it did not appear to harm him. He also began to feel that he could talk with animals and could communicate with other people in a non-verbal manner. He also began to hear voices of individuals he could not recognize and these were, similarly, not threatening to him. He felt that his caseworker there knew of these events so felt no need to discuss or mention them directly. . . .

"Upon his return to San Diego, Mr. Ford found that these unusual events were beginning to form into a slightly different pattern in which he felt that the public, as a whole, might be trying to see him as a God of some kind—perhaps as Jesus Christ. . . .

"After giving due consideration to the possibility that Mr. Ford may be malingering for some reason, I came to the conclusion that this is probably not the case. Rather, I think he is presently experiencing an episode of Schizophrenia which has some acute, undifferentiated quality to it with some underlying paranoid features. He does not yet have a fairly fixed set of delusional ideas but these appear to be differentiating to some degree and a more firmly defined picture may emerge in the near future. It is perhaps appropriate to comment that this disorder had no apparent relationship to his participation in the crime to which he has confessed nor does it presently serve to excuse him from the guilt he feels as a result of this act.

"Rather, it would appear that this disorder has been developing for some time in the

past and is a means of psychologically overcoming all of the many disappointments and setbacks he has felt in his life over the past few years. . . ."

2. Fed.R.Crim.P. 33.

3. "The defendants urge that the evaluation of Larry Lee Ford conclusively demonstrates that Mr. Ford was incompetent at the time of trial. Defendant Harris fails to point to any passage in the record that would suggest that Larry Lee Ford was experiencing delusions of grandeur at the time of trial. Moreover, even assuming that Mr. Ford was experiencing the heightened sense of self, there is no apparent relationship between this delusion and the testimony elicited at trial.

"Mr. Ford's testimony pertained to the narration of neutral events which would not necessarily be affected by an alleged schizophrenic episode. The observations of Dr. Robuck do not support defendant's contention; they seemed to belie it.

"In any event, the evidence pertaining to Mr. Ford's mental condition is insufficient to compel this court to exercise its discretion in granting a motion for new trial. . . .

"Moreover, this court is of the opinion that the newly discovered evidence is not of such a nature that a different verdict would probably result in the event of a retrial. Even without the testimony of Mr. Ford, this court is unable to conclude that the trial testimony would not have supported the guilty verdict."

297, 30 L.Ed.2d 260 (1971) quoting *United States v. Polisi,* 416 F.2d 573, 576–577 (2d Cir. 1969).

▮ The first requisite was established as to both appellants; clearly the evidence was first discovered long after the trial was held.[4] With regard to at least Hollins, however, it is manifest that neither of the two remaining elements supports his motion. The statement of Dr. Robuck at best went merely to the impeachment or lack of credit of a witness who testified against the appellant, which ordinarily is not sufficient. *United States v. Colacurcio,* 499 F.2d 1401, 1406 (9th Cir. 1974); *United States v. Cozzetti,* 469 F.2d 684, 685 (9th Cir. 1972); *United States v. Sposato,* 446 F.2d 779, 781 (2d Cir. 1971), *supra* ; *United States v. Robinson,* 329 F.Supp. 723 (D.Del.1971), *aff'd sub nom., United States v. Barber,* 456 F.2d 579 (3d Cir. 1972). Since there was almost unanswerable proof otherwise connecting Hollins with the crime,[5] the new evidence probably would not have produced a different verdict in the event of a retrial.

The situation is different as to Harris only because proof directly corroborating Ford's testimony was more attenuated. Yet indirectly Harris was tied inextricably to Hollins in the context of the robbery.[6] Nor in any event can Ford's testimony be disregarded. The newly discovered evidence was insufficient *per se* to throw that testimony into question. Dr. Robuck's report did not purport to show that the witness testified inaccurately or that his testimony was in any way affected by the mental abnormalities which first appeared months later. Indeed, as the trial court observed in ruling upon the motion, it tended to belie any significant connection between Ford's mental illness and his testimony. Perhaps the most that can be fairly said is that the report could have provided subject matter for cross-examination raising some question of credibility in the minds of the jurors. But, again, such possible evidence is not the kind that would justify a new trial.

▮ There remains, however, the question whether the trial judge abused his discretion in refusing to further investigate the possible relationship, if any, between Ford's abnormal mental condition first observed in October, 1974, and his testimony at the trial during the preceding March, with a view to the discovery of evidence that might be sufficient to justify a new trial.

Related problems are not new to this court. In *United States v. Barnard,* 490 F.2d 907, 912 (9th Cir. 1973), *cert. denied,* 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974), no abuse of discretion was found in the refusal of the trial court to authorize a pre-trial psychiatric examination for the

---

4. Appellants do not suggest that Ford evidenced any mental abnormality at the trial. The affidavit of Harris' trial counsel in support of the motion stated that "he first became aware of Mr. Ford's bizarre behavior during the sentencing proceedings before this [the district] court in case no. 74–1015 criminal sometime during the first week of October, 1974, approximately seven months after the trial of the instant case was concluded" and that "prior to his having heard of Mr. Ford's behavior on Oct. 1, 1974, he had no reason to believe and no grounds upon which to assert that Mr. Ford was incompetent as a witness."

5. Journey testified that for $200.00 he turned over his car for use by Harris and Hollins on the day of the robbery; this car was seen being loaded with a bag and a gun from the get-away vehicle shortly after the robbery and Hollins' palm prints were found on the getaway car.

Moreover, there was a convincing eye-witness identification of Hollins as one of the robbers by a bank teller.

6. There was credible testimony from Journey that he saw Harris with Hollins both at the time the transfer car was picked up from him and when that car was returned following the time of the robbery. Clothes used by Ford during the robbery were found in a trash can at the rear of the apartment building in which Harris lived. The day following the robbery Harris arranged to buy a second-hand Cadillac, paying $400 down in cash pending servicing of the car, and an additional $1143.00 in cash the next day when he picked up the car. The explanation advanced by Harris' mother of furnishing these funds to him was unconvincing if not incredible under the circumstances she related.

purpose of determining the competency of a codefendant who was going to testify for the government and who had evidenced psychiatric problems leading to his discharge from the army twelve years earlier. The competency of the witness, it was said, was for the trial judge to decide without the aid of expert testimony if he so chose. So it was here, as the trial court viewed Ford's testimony in retrospect.[7]

We should extend deference to the judgment of the trial court in view of its opportunity to hear the testimony of the witness during the trial, to observe his demeanor and to note reactions or responses under the pressure of cross-examination. It concluded that in view of personal observations, not only was there no relationship between the subsequent manifestations of Ford's mental abnormality and his testimony at the trial, but the result of the trial likely would not be affected by further probing into any such possible relationship. The trial court's observation that, indeed, the psychological study already before it tended to belie any such relationship is not an unreasonable appraisal of the report as a whole.

It is not reasonable to suppose that Ford could be shown to have been incompetent to appear as a witness at the time of the trial in view of Dr. Robuck's report and his own trial testimony, as to which even now the appellants are unable to point to any intrinsic infirmities.[8] The hope, despite indications to the contrary in the report, that something might develop from a new examination that could significantly affect the competency, much less credibility, of Ford upon a retrial is not enough. Appellants' request under the circumstances was in the nature of a mere fishing expedition which carried no strong appeal to sound judicial discretion.

We conclude as to each appellant that the trial court was guilty of no abuse of its discretion either in denying the motion for a new trial or in refusing to furnish the requested psychiatric assistance at government expense.

AFFIRMED.

7. We have also considered the suggestion made by counsel in the briefs and more specifically during oral argument that the court at least should have held an evidentiary hearing. The holding of an evidentiary hearing in connection with a motion for a new trial is discretionary with the court. *United States v. Scott,* 521 F.2d 1188, 1195–96 (9th Cir. 1975); *United States v. Thompson,* 493 F.2d 305 (9th Cir.), *cert. denied,* 419 U.S. 834, 95 S.Ct. 60, 42 L.Ed.2d 60 (1974). Moreover, it is to be noted that neither defendant requested an evidentiary hearing, their motion being for a new trial and "for leave to employ a qualified psychiatrist at government expense to review the materials relied upon by Mr. Robuck in reaching the conclusions contained in his letter, for the purpose of offering his opinion as to the mental competency of Mr. Ford at the trial of the above-entitled matter held on March 7, 8, 12, 13 and 14, 1974." Apparently appellants were dissatisfied with Dr. Robuck's conclusions on the latter point. They did not seek to have those conclusions further explored in an evidentiary hearing. There seems no basis for any complaint for failure of the trial court to hold an evidentiary hearing.

8. The very circumstance pressed by counsel for one of the appellants to demonstrate that the evidence relied upon was indeed newly discovered—that until several months after the trial counsel "had no reason to believe and no grounds upon which to assert that Mr. Ford was incompetent as a witness" (see n. 4, supra) —supports the trial court's observations and ruling. And a perusal of the 68 pages of the trial transcript required to cover the direct and cross-examination of Ford has been reassuring to us that Ford's testimony reasonably could be thought rational, coherent and realistic by the trial court. Cf. *United States v. Matanky,* 482 F.2d 1319, 1324 (9th Cir.), *cert. denied,* 414 U.S. 1039, 94 S.Ct. 539, 38 L.Ed.2d 329 (1973).